### ROYAL INSURANCE COMPANY v. H. M. McINTYRE.

Decided November 23, 1896.

**1   Fire Insurance—Total Loss—Evidence.**

In an action on a policy of fire insurance, on the question whether or not there was a total loss, it was error to exclude evidence offered by defendant to prove: the cost of repairing and restoring the building to its original usefulness and strength; the value of the material in the house still uninjured; the proportion of its material left uninjured and capable of being used in its reconstruction; the proportion of the building destroyed; that it could be rebuilt without tearing down; that the greater portion remained uninjured and intact and by replacing the damaged portion the building would have been as good as new. (Pp. 173 to 182.)

**2.   Same—Total Loss Defined.**

The authorities on the subject of what constitutes a total loss of property insured reviewed, and held: that there can be none so long as the remnant of the structure standing is reasonably adapted for use as a basis upon which to restore the building to the condition in which it was before the injury; that whether it is so adapted depends upon the question whether a reasonably prudent owner, uninsured, desiring such a structure as the one in question was before injury, would, in proceeding to restore the building to its original condition, utilize such remnant as such basis. (Pp. 173 to 182.)

ERROR to Court of Civil Appeals, Fourth District, in an appeal from Dallas County.

The suit was brought by McIntyre to recover on a fire insurance policy for $2000 on his house. He had judgment for the full amount of the·

policy; defendant appealed, and on affirmance by the Court of Civil Appeals obtained writ of error.

*W. J. J. Smith* and *Oeland & Littleton,* for plaintiff in error.—All evidence tending to show the value of the building and the extent of the injury to the building is admissible to go before the jury for the purpose of enabling the jury to determine whether the building is a total loss or only damaged. Ins. Co. v. Garlington, 66 Texas, 106; Williams v. Ins. Co., 54 Cal., 450; Harriman v. Ins. Co., 49 Wis., 71.

The identity and specific character of the building cannot be destroyed where all the component parts of the building are still standing except the roof. The evidence excluded was vital to the cause and the error necessitates reversal. Ins. Co. v. Garlington, 66 Texas, 106; Harriman v. Ins. Co., 49 Wis., 71; Seyk v. Ins. Co., 74 Wis., 67; Williams v. Ins. Co., 54 Cal., 450; Ins. Co. v. Eddy, 54 N. W. Rep., 856.

*McCormick & Spence,* for defendant in error.—A fire insurance policy on real estate, in case of a total loss by fire of property insured, by statute in Texas becomes a liquidated demand against the company for the full amount of the policy, and no provision of the policy inconsistent with the statute can be held valid. Rev. Stats., art. 2971. Assur. Co. v. Meyer, 29 S. W. Rep., 93; Ins. Co. v. Garlington, 66 Texas, 103; Ins. Co. v. Holland, 2 Willson's C. C., sec. 448; Ins. Co. v. Jefferson Ice Co., 64 Texas, 582; Thwing v. Ins. Co., 111 Mass., 93; Heebner v. Ins. Co., 10 Gray, 131; Ins. Co. v. Bean, 60 N. W. Rep., 907.

Our statute declaring an insurance policy on real estate in case of total loss a liquidated demand for the amount for which it is written by its own vigor precludes the idea that this liquidated amount can be lessened by the value of the debris. No deduction can be made from the face of the policy in case of total loss on real estate. Assur. Co. v. Meyer, 29 S. W. Rep., 97; Ins. Co. v. Garlington, 66 Texas, 103; Baker v. Assur. Co., 57 Mo. App., 559; Ins. Co. v. Bachter, 62 N. W. Rep., 911; Corbett v. Ins. Co., 32 N. Y. Sup., 1059.

The court did not err in excluding the evidence offered, because the subject of inquiry and the issue was as to condition and not value. Testimony of value of the house originally or of the debris was properly rejected as not illuminating the question, whether the building had lost its specific character or was after the fire still a building. Ins. Co. v. Meyer, 29 S. W. Rep., 97; Williams v. Ins. Co., 54 Cal., 450; Ins. Co. v. Garlington, 66 Texas, 106; Huck v. Ins. Co., 127 Mass., 309; May on Ins., 421a.

DENMAN, ASSOCIATE JUSTICE.—McIntyre brought this suit against the Royal Insurance Company, alleging in substance that said company issued to him upon his two and one-half-story frame building a policy of $2000, additional concurrent insurance for $1500 having been permitted

in another company; that while said policy was in full force the house was totally destroyed by fire, whereby loss occurred to him of $3500 and whereby defendant became liable and promised to pay him said $2000, for which he sought judgment.

The Insurance Company answered, among other things, (1) a general denial; (2) that the policy sued on contained a stipulation to the effect that if there be other insurance on the building said company should be liable for no greater proportion of the loss sustained than said $2000 might bear to the whole amount of such insurance; that the building was not a total loss, but was only damaged to the extent of $1887; that in addition to the policy of $2000 issued by defendant, the German Insurance Company had a policy thereon amounting to $1500; that if defendant is liable to plaintiff, it is only liable for four-sevenths of said $1887, to-wit, $1076.28, the same being its proportionate amount of damage caused to the building by the fire.

Thus it will be observed that plaintiff sought to recover for a total loss, while the defendant contended that the loss was not total, but that the house was merely damaged.

According to the testimony of plaintiff, the roof was burned off and the east wall, where the fire caught from an adjoining building, was practically destroyed, and the rooms in the attic as well as the attic floor were ruined, but the second and lower stories, together with the partitions, doors, windows, blinds, the south, west and north walls, were still standing in position and not injured to any great extent; the plastering, papering and floors and the finish of the wood-work inside was very much damaged by water; and taken as a whole the building was totally ruined.

O'Riley, witness for defendant, testified that the debris of the roof was all piled on the attic floor, but the fire did not burn through the floor; that there was a little stairway leading from the second to the third floor and where the fire had fallen down this stairway it had burned it; that the cornice on the inside all round the building was charred and injured so as to necessitate taking it off and replacing it; that all the laths and a greater part of the ceiling over the second story were still on; that the building was not burned anywhere on the inside below the attic floor except a portion in the extreme east of the kitchen and the room upstairs over the kitchen; that the damage did not extend below the third or attic floor of the building; that a greater portion of the weather-boarding on the east wall—that is the front portion of the east wall—would only require repainting; that about two-thirds of the weather-boarding of the east wall was entirely burned off and only about two-fifths unfit for use; that none of the storm sheeting of the east wall was burned off, and all could be used in rebuilding, but it was charred—probably one-half of it had been injured and charred in some way by the fire; that there were no holes burned through the east walls; that none of the sash of east wall were out of place, yet several of them were damaged to such an extent they could not be used; that some of the blinds of the windows on the east wall were still in

position and could be used; that the base and water table of the east wall were perfect; that none of the studding of the east wall was entirely burned away; that none of the east wall was out of plumb or in danger of falling; that there was not a wall in the building that was out of plumb; that only a small portion of the studding on the east wall had been charred and injured at all by the fire, it having been protected by the sheeting, none of which had been burned through; that to make the wall as good as new, two or three of the studding will have to be taken out. With the exception of the specific injuries to the building above stated the general tenor of this witness' testimony was to the effect that the house was not injured except some damage to the plastering and interior finish in different portions of the house by water.

The testimony is quite voluminous and not necessary to be stated, but we have given a portion of that of the two witnesses above without undertaking to give their language or to state the facts in the order in which they appear in the testimony, in order that the general tenor of the testimony on each side may be understood.

The defendant offered to prove by several expert witnesses "the cost of repairing and restoring said building to its original usefulness, strength and utility; that this could be done at a cost of from $1200 to $1800; the value of the material still uninjured in said house, and that the same was worth about $2500; that the value of the house after the fire was about $2500; that about 90 per cent of the material still in the house after the fire was uninjured, and that the remainder of said building could be used for reconstructing said building; that only about 20 per cent of the building had been destroyed; that the building could be renewed and rebuilt without tearing it down; that the greater portion of said building remained still uninjured and intact, and that by replacing the damaged portions the building would have been as good as new;" which evidence was excluded by the court, to which action of the court defendant duly reserved its bill of exceptions.    The plaintiff recovered a judgment against defendant for the full amount of the policy, which judgment having been affirmed by the Court of Civil Appeals the cause has been brought to this court by the Insurance Company, assigning as error the action of the Court of Civil Appeals in holding that the trial court did not err in excluding said testimony.

We have not been able to find either in the cases or text books any instance in which the admissibility of such evidence has been challenged, and therefore know of no direct authority upon the question; but a careful reading of many reported cases, both upon maritime and fire insurance, convinces us that such evidence has been generally received, upon the issue as to whether the loss was total or partial, both in the English and American courts: Aranzamendi v. La. Ins. Co., 2 La., 432; 22 Am Dec., 136; Saltus v. Ocean Ins. Co., 12 Johnson, 107; 7 Am. Dec., 290; Rosetto v. Gurney, 11 C. B., 176; Grainger v. Martin, 2 B & S., Q. B., 456; Moss v. Smith, 9 M. G. & S., 93; Adams v. McKenzie, 13 C. B. (N. S.),

442; Wallerstein v. Col. Ins. Co., 44 N. Y., 204; Great Western Ins. Co. v. Fogarty, 19 Wall., 640; Ampleman v. Ins. Co., 35 Mo. App., 308-320; Harriman v. Queen Ins. Co., 49 Wis., 71; Brady v. N. W. Ins. Co., 11 Mich., 426-449; Williams v. Hartford Ins. Co., 54 Cal., 442.

But while the apparent general reception of such evidence, in the absence of an objection to or discussion of its admissibility, tends to show the consensus of opinion as to its competency among the many learned writers, advocates and jurists who have been called upon to deal with the intricate question as to whether a loss was total or partial, nevertheless the subject is not entirely free from difficulty.   This difficulty grows out of the inadequacy of language to so definitely express the legal conception of "total loss" as clearly to include every proper case and exclude every improper one.   For if the rule could be stated in language susceptible of only one construction then there would be little difference of opinion as to what evidence would be proper as tending to include or exclude a given case from its terms.   In Hugg v. Aug. Ins. & Banking Co., 7 How., 595, (1849) which was a suit to recover upon a policy of insurance on the freight of a vessel, the policy containing a memorandum clause, the court undertook to lay down the rule as to total loss of cargo so as to deprive the vessel of the opportunity of earning freight for its carriage, as follows:   "If the jury find that the jerked beef was a perishable article within the meaning of the policy, the defendant is not liable as for a total loss of the freight, unless it appears that there was a destruction in specie of the entire cargo, so that it had lost its original character at Nassau, the port of distress, or that a total destruction would have been inevitable from the damage received, if it had been re-shipped, before it could have arrived at Matanzas, the port of destination."   The opinion places stress upon the proposition that the real test of total loss in such cases is whether there is a destruction in specie rather than in value, but there is nothing said to indicate that evidence of value would have been inadmissible in order to determine whether there had been a destruction in specie.

In Great Western Insurance Company v. Fogarty, 19 Wall., 640, (1873) the action was on a policy of marine insurance with memorandum clause insuring certain machinery to be transported by vessel from New York to Havana.   Just before reaching the latter the vessel was wrecked and abandoned to the underwriter, whose agent at Havana took possession and was engaged about a month in raising the cargo.   A large number of pieces composing plaintiff's machinery were recovered and tendered to him at Havana, which he refused to receive, on the ground that the Insurance Company was liable to him as for a total loss, and for that the action was commenced.   The Insurance Company denied that there was a total loss.   The evidence showed that the machinery was all of iron, "about half of its weight was saved and the remainder left at the bottom of the sea.   That which was saved was entirely useless as machinery and was of no value except as old iron, for which purpose it would sell for about $50.   The machinery in working order was worth $2250.   That

which was saved was much broken and rusted, so that it would cost more to repair it, polish it, and put it in order for use, than to buy a new machine." Throughout this opinion it is apparent that the court considered the evidence that it would cost more to repair or polish and put in order for use the old machinery than to buy new, as very important in determining whether the machinery had been destroyed in specie. We apprehend that the decision would have been the same if every piece of the machinery had been recovered in its original form, unbroken and uninjured, except that it was so rusted from the action of the water "that it would cost more to polish it and put it in order for use than to buy a new machine." Thus we think the court in this case, while adhering to the rule laid down in the case next above cited, that in order to constitute a total loss there must be a "destruction in specie," clearly recognized the fact that the adaptability of the recovered pieces of machinery to the uses for which they were originally intended was the real practical test as to whether there had been a "destruction in specie" within the meaning of the rule, and further that the probable cost of polishing and putting it in order for use was an important element in determining whether it had, when rescued from the wreck, lost such adaptability; for Justice Miller, who delivered the opinion, says: "If parts of them were absolutely lost, and every piece recovered had lost its adaptability to be used as part of the machine,—had lost it so entirely that it would cost as much to buy a new piece just like it, as to repair or adapt that one to the purpose,— then there was a total loss of the machinery. If no piece recovered was of any use or could be applied to any use connected with the machine of which it was a part, without more expense on it than its original cost, then there was no part of the machinery saved, however much of rusty iron may have been taken from the wreck."

In the leading case of Irving v. Manning, supra (M. G. & S., vol. 6, 391), decided in the House of Lords, the suit was upon a policy for £3000, claiming total loss of the ship insured, which was valued in the policy at £17,500, it being what is technically known as a valued policy. The special verdict showed "that the vessel during the voyage was so damaged as to be incompetent to proceed without repairs; that the necessary expenditure in order to repair her and make her seaworthy would have amounted to £10,500 and that the ship would have been then worth £9000 only, which was her marketable value then and at the time of the policy; that a prudent owner, uninsured, would not have repaired the vessel; and that she was duly abandoned to the underwriters." The effect of a valued policy is that the valuation of the ship agreed upon is, in the absence of fraud pleaded and proved,—which was not done in this case,— to establish as conclusive the value agreed upon as the true value of the property for purposes of recovery. In this case, however, the Insurance Company contended that the agreed valuation of £17,500 should also be taken as conclusive of what the ship would have been worth, if the £10,500 had been expended in repairing it, instead of permitting its real

value, as found by the special verdict, of £9000 after repairs, to be looked to. If this contention of the company had been correct, then, under the English rule which makes the test of total loss of a ship depend upon whether it cost more to repair it than the ship would be worth after it had been repaired, there would clearly have been no total loss, because the £17,500 agreed valuation was in excess of the £10,500 estimated as necessary to repair. The court, however, held that the contention of the company could not be maintained, but that the usual test applied in the English courts in such cases must apply to valued policies, and since the £10,500 estimated as necessary cost of repairing was greater than the £9000 estimated value of the ship after it was repaired, there was a total loss. In the course of the opinion delivered by Patterson, J., he said: "If this had not been the case of a valued policy it is clear that on facts found there was a total loss, for a vessel is totally lost within the meaning of the policy when it becomes of no use or value as a ship to the owner, and is as much so as if the vessel had gone to the bottom of the sea, or had broken to pieces and the whole or great part of the fragments had reached the shore as a wreck; and the course has been, in all cases in modern times, to consider the loss as total, where a prudent owner, uninsured, would not have repaired." Again, in the course of the opinion, it is said: "The principle laid down in these latter cases is this—that the question of loss, whether total or not, is to be determined just as if there was no policy at all; and the established mode of putting the question, when it is alleged that there has been what is, perhaps improperly, called a constructive total loss of a ship, is to consider the policy altogether out of the question, and to inquire what a prudent uninsured owner would have done in the state in which the vessel was placed by the perils insured against. If he would not have repaired the vessel, it is deemed to be lost." This and other English authorities heretofore cited in this opinion show that the rule is settled in English practice that the test by which it must be determined whether there has been a "total loss" of a ship is whether she has received such extensive damage that it would not be reasonably practical to repair her so as to adapt her to the uses for which she was originally intended, and that in determining whether it is reasonably practical to so repair her, the true inquiry is, "what a prudent uninsured owner would have done in the state in which the vessel was placed by the perils insured against;" that question being answered, in most cases at least, by a determination of the comparative cost of such repairs with the actual value of the ship after repaired. Thus it appears, that under the English rule testimony as to the cost of repairs is of very material character and no question could be made as to its admissibility.

We do not undertake to determine whether there is any distinction between the principles which should govern in determining what is a total loss of a ship or cargo under policies of marine insurance and those of ordinary fire insurance, as that question is not before us, but since the American cases, undertaking to law down the rule whereby it is to be de-

termined whether a loss is total or partial under an ordinary fire insurance policy, have apparently been based upon marine insurance cases, we have deemed it proper to briefly state our conclusion as to the doctrine established by the above cases preparatory to a review of some of the leading fire insurance cases upon the question of total loss, which we will now proceed to examine.

In the leading case of Williams v. Hartford Ins. Co., 54 Cal., 449, the evidence, as far as stated, was as follows: " 'The building was entirely burned out. It had every appearance of being a fire of great heat. Portions of the old wall were standing—that is, in position; they were all cracked and warped; wherever joists had been in, they were badly torn out, apparently from the falling of the joists. It was so perfect a destruction, that I, as well as the architect who examined it with me, placed it as a total destruction,—that is was perfectly worthlesss as a building. In my own mind I deemed the building worthless. That which was left standing would just amount to debris. It was a wall which was unfit for use with any safety. I thought we would have to tear it down to make a new wall. It would have to be torn down and replaced,—that is, another wall built in its place. I have been an extensive builder. * * * The shutters were warped and blistered, and injured to such an extent that I considered them perfectly worthless for any purpose, even as old iron, unless you might get some of the bands on the wrought-iron portion. The balance of the iron-work—the pillars, for example—they were all warped so much that, while you might use them, you could not use them to make a perfect wall as it was before; hence, I class that simply as old iron.' The witness further testified, that after the fire he sold his interest in the ground upon which the building had been erected, to one Douglas, and told him, so far as the old debris was concerned, he could take it, that he did not care anything about it." The trial court charged the jury as follows: " 'A total loss does not mean an absolute extinction. The question is not whether all the parts and materials composing the building are absolutely or physically destroyed, but whether, after the fire, the thing insured still exists as a building. Although you may find the fact that after the fire a large portion of the four walls were left standing, and some of the iron-work still attached thereto, still if you find that the fact is that the building has lost its identity and specific character as a building, you may find that the property was totally destroyed within the meaning of the policy;' " which charge was held not to be error. The charge was evidently based upon the rule announced in Hugg v. The Augusta Ins. Co., referred to above. There was no question made in that case as to the admissibility of evidence tending to show the adaptability or practical usefulness of the old walls as a basis of restoring the building to its original condition nor as to evidence showing what the probable cost of such restoration with the use of the old walls would have been in order to determine whether a prudent uninsured owner would have undertaken to repair the building or would have treated it as a total loss and cleared

away the ruins and rebuilt. Therefore we cannot regard this case as deciding any more than that, with no objection to the evidence and with no special charge asked presenting the issue omitted by the court as to what a prudent owner would have done under the circumstances, there was no affirmative error in the charge of the court necessitating a reversal. It is certainly not authority for the ruling of the court in excluding the testimony in the case before us; and we apprehend that if there had been evidence offered tending to show that by the use of the old walls as a basis for the structure the building could have been repaired and made as good as it originally was at a less cost than the amount of insurance, its exclusion could not have been justified under the spirit of either the English cases or of Insurance Company v. Fogarty, above reviewed, but that under those cases it must have been admitted as a circumstance to enable the jury to determine the question of fact as to whether the loss was total or partial.

We do not regard the cases of Nave v. Ins. Co., 37 Mo., 430, and Huck v. Globe Ins. Co., 127 Mass., 306, cited in the opinion of the court in Williams v. Hartford Ins. Co., supra, as having any bearing upon the question under consideration, and therefore do not deem it necessary to review the same.

In Seyk v. Millers' Nat. Ins. Co., 74 Wis., 67 (41 N. W., 443), under a similar statute to ours, the question was, whether the loss was total, and the court say: "The evidence is, that all the combustible material in the structures was destroyed, and although portions of the brick walls were left standing, yet they were useless as walls, and many, perhaps most, of the bricks therein were spoiled by the heat. It cannot be doubted that the identity and specific character of the insured buildings were destroyed by the fire, although there was not an absolute extinction of all the parts thereof. This was an entire destruction of the buildings, within the meaning of the statute. (I. Wood on Insurance, sec. 107.) The jury were so instructed." Thus it will be observed that the court finds that the evidence conclusively shows that the portions of the walls which were left standing were useless as walls and that many, perhaps most, of the bricks therein were spoiled by the heat, and upon that finding of fact conclude that the court below correctly instructed the jury that there was a total loss. The language used indicates that the court based its opinion, that the identity and specific character of the buildings were destroyed, upon the fact established by the evidence that the walls were useless as walls. We are not informed as to what evidence was contained in the record from which the court drew the conclusion of fact that the walls were useless as walls, but certainly upon such issue there can be no doubt but that testimony as to the adaptability of the walls as a basis for restoring the building to its original condition and the propable cost of so doing, would have been competent. Citing this case, the Supreme Court of Nebraska, in German Ins. Co. v. Eddy, 36 Neb., 461 (54 N. W., 856), without stating the particular facts before the court, in holding that the evi-

dence justified a verdict of total loss, say: "What is the meaning of the words 'wholly destroyed' when applied to a building? If the building was constructed of brick or other non-combustible material, fire could not destroy that. Therefore the brick or other material not destroyed would have some value, which the party retaining should pay for. From the nature of the case, therefore, the words referred to do not mean the debris from the building destroyed. This may have some value, and if so the Insurance Company, if it pays the loss, is entitled to compensation for. The words when applied to a building mean totally destroyed as a building; that is, that the walls, although standing, are unsafe to use for the purpose of rebuilding and must be torn down and a new building erected throughout. * * * There is abundant proof in the record that such was the situation of the building in the case at bar after the fire." We are of opinion that the observations made by us in reference to Seyk v. Millers' Nat. Ins. Co. are also applicable to this case, and that the same may be said of Ins. Co. of North America v. Bachler, decided by the same court—62 N. W. Rep., 911.

In Harriman v. Queen Ins. Co., 49 Wis., 71, the special verdict showed that the property insured was totally destroyed by fire; that no portion of the brick walls of the building could be used for rebuilding it after the fire; that the foundation left after the fire was not sufficient to support a building of the same weight and dimensions of the building burned; that a new building like the one burned could not have been built upon the same spot after the fire without incurring expense in getting rid of worthless fragments of the old building, at least equal to the full value of all that was left of the building burned, and that the materials left after the fire were not of as much value for any useful purpose, as the expense would have been of getting the same out of the wreck of the building as it was left by the fire. In passing upon the question as to whether a total loss was shown, the court held, that the findings of the jury were supported by the evidence and showed that the building was a total loss within the meaning of the statute. The testimony is not given, but it is clear that testimony of the character excluded by the court below in the case before us must have been introduced and considered of the most material nature in the court below.

In Oshkosh Pack. & Prov. Co. v. Mercantile Ins. Co., 31 Fed. Rep., 200, the court instructed the jury that the undisputed evidence showed a total loss of the building, but as the evidence is not stated, we cannot determine whether the case has any bearing upon the question before us or not.

In Brady v. N. W. Ins. Co., 11 Mich., 426, it appears from the extracts of the evidence given in the statement of the case by the reporter and the opinions of Martin, C. J., and Campbell, J.,—that the action was brought upon a policy for $2000, claiming a total destruction of the building; that an ordinance passed by the city forbade the repair of any wooden building partially destroyed by fire in the district where the one in question was situated; that the building was injured by fire; that sev-

eral witnesses on behalf of defendant testified what in their judgment was necessary to restore the building to the condition it was in immediately preceding the fire, but the effect of such testimony is not given; that the value of the building as left after the fire, "for purposes of repair, was more than half of its value before the burning and amounted to from $2000 to $3000; while, if not allowed to be repaired, the materials were of very trifling value." The majority of the court held that the loss was total, on the ground that the ordinance forbidding the repairing of a building partially destroyed by fire was a part of the policy and that the result of the fire taken in connection with the ordinance had caused a total loss of the building. Campbell, J., in a dissenting opinion, disagrees with the majority of the court in the result reached upon the ground that in his opinion the ordinance was void as to this policy, it having been enacted after the policy was issued, but in a very learned and lucid opinion shows that if the ordinance be valid, the opinion of the majority of the court is correct. In the course of his opinion, after referring with approval to the opinion rendered in the House of Lords, as above stated, in Irving v. Manning, he says: "This rule seems to me very simple and entirely fair. It is the only rule which can give to the insured the indemnity he bargained for. If, for any reason except a personal one, the repairing of the property would not be undertaken by a prudent owner, who was uninsured, it would not be reasonable to admeasure damages upon another basis practically false. If repairs are absolutely impossible, the remnants are worth nothing except as lumber. It can, in my judgment, make no difference why the repairing cannot be done, if an insuperable obstacle exists. Any such obstacle affects the owner as severely as any other obstacle. Submission to the law is as incumbent as submission to any other necessity and must be regarded as equally unavoidable." The obstacle referred to as showing a total loss was the ordinance above referred to, supposing it to be valid; which, however, he afterwards undertakes to show to be invalid. We are of opinion that the whole tenor of this opinion shows that the learned judges who at that time composed the court were of the opinion that the reasoning of the English cases above referred to is sound, from which it results that evidence of the character complained of in the case before us is admissible.

In Ampleman v. Citizens Ins. Co., and Ampleman v. North British & M. Ins. Co., 35 Mo. App., 308-320, the suit was upon a policy of insurance claiming total loss of a building. On the trial the plaintiff gave evidence tending to show the fire substantially destroyed the building as a structure; that the wood-work with the exception of one corner of the building had been consumed so as to render it worthless, and that the brick walls had been materially injured and were not fit to be used in the reconstruction of the building. Defendant gave evidence tending to show that two of the main walls were injured by the fire to such an extent that they would have to be taken down and replaced with new walls if the building was to be reconstructed, but that the two remaining walls were

substantially uninjured and could be utilized in rebuilding the structure without taking them down; that the entire insurance on the building was $3750, to-wit, $2250 in the defendant company, and the balance in another; that the building could have been restored to its condition before the fire by utilizing the remaining walls fit for use and materials at a cost of less than $2200.   In the first of said cases the trial court in its charge instructed the jury as to what their verdict should be in case the building was "wholly destroyed" and what it should be if the building was "not wholly destroyed;" but did not indicate to them the meaning of the term wholly destroyed, as used in the statute of that State, similar to ours. The court in passing upon the meaning of the words, "wholly destroyed," say, that a building is "wholly destroyed only when no part of it above ground remains intact and substantially uninjured, and no such part of it can be utilized as a remaining standing structure, in effectually restoring the structure to its entirety;" and held that the trial court erred in refusing the defendant's second instruction, which declared the law of the case applicable to the facts substantially as stated in the opinion.   In the second case, the court held that the trial court erred in refusing the following instruction asked by the defendant:   "'1.   The court instructs the jury that if they find from the evidence that after said fire there remained any portion of the walls of said building that could be used for rebuilding it after said fire, and that such remaining walls were sufficient to support that part of a building of the same value, weight and dimensions and construction as the building burned, and that by using these walls said building could be built for a less sum of money than if they were not to be used, then the building was not wholly destroyed.' "

Thus it is clear that the court were of the opinion that evidence of character excluded by the trial court in the case before us should have been admitted.

We do not wish to be understood in what we have said, in reviewing the cases above, as intimating that we approve or disapprove of any of them, except in so far as they indicate that the character of evidence excluded by the trial court in the case before us is admissible upon the issue of total loss.

To push the idea of "destruction in specie" to the extent of excluding all consideration of the adaptability of the remainder of the structure for use in restoring the building to its original condition, as seems to have been done in this case, would leave us with practically no guide, as it would be more difficult to determine the meaning of "destruction in specie," as thus limited, than of "total loss."   It would logically result in denying recovery for a total loss in a case where the exterior form of the building remains, though the interior be so damaged that the entire remnant of the structure is valueless as a basis upon which to restore the building to its original condition, and would permit a recovery for a total loss in a case where an inexpensive portion of the building has been destroyed, though the most valuable and substantial portion remains unin-

jured and capable of being utilized with great advantage in such restoration. To so hold would virtually be to abandon the principle of indemnity lying at the basis of all legitimate insurance and to hold out to the owner, instead thereof, a fair chance if not an inducement to profit by the partial destruction of his property.

After a careful consideration of the question we are of opinion that 'there can be no total loss of a building so long as the remnant of the structure standing is reasonably adapted for use as a basis upon which to restore the building to the condition in which it was before the injury; that whether it is so adapted depends upon the question whether a reasonably prudent owner, uninsured, desiring such a structure as the one in question was before injury, would, in proceeding to restore the building to its original condition, utilize such remnant as such basis; that upon such issue the character of evidence offered and rejected in this cause is competent; that our statute providing that "A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy; provided, that the provisions of the article shall not apply to personal property," (Rev. Stats., art. 3089-2971) does not affect the character of evidence admissible on the issue as to whether the loss is total, but merely affects the right of the parties in case of total loss.

For the error in excluding the testimony the judgment will be reversed and the cause remanded.

*Reversed and remanded.*