**RANGER INSURANCE COMPANY,**
Appellant,

v.

**Lee KIDD et al., Appellees.**

No. 8206.

Court of Civil Appeals of Texas,
Amarillo.

March 27, 1972.

Rehearing Denied April 17, 1972.

Stubbeman, McRae, Sealy, Laughlin & Browder, Rodney W. Satterwhite, Rush Moody, Jr., Midland, for appellant.

Vernon A. Townes, Denver City, for appellees.

JOY, Justice.

This is an appeal from a judgment entered in favor of appellee Lee Kidd, et al., allowing recovery for a total loss under an aircraft insurance policy issued by appellant Ranger Insurance Company.

Affirmed.

The facts of this case are in the main part undisputed. Appellees are the owners of a Piper Cherokee 235C, a four passenger aircraft manufactured by Piper Aircraft Corporation and sold primarily to persons involved in private aviation through distributors and dealers throughout the world. Appellees held a "valued policy" of insurance on the aircraft issued by appellant for the sum of $23,000.00 with a $500.00 deductible clause. On May 30, 1969, the aircraft insured by appellant crashed at a landing strip near Llano, Texas. Appellee Lee Kidd was the pilot of the aircraft at the time of the crash. Thereafter, appellees gave notice of such crash and claimed a total loss of the aircraft under the terms of their insurance policy. Appellant refused the request for payment made

by appellees on the ground that the aircraft was not a total loss but was a partial loss, and thus its liability under the policy extended only to cost of repairs.

Upon refusal by appellant to pay the total loss claim, appellees filed this lawsuit against appellant claiming a total loss and prayed for relief in the sum of $22,500.00, this being the value of the policy less the $500.00 deductible. Appellant answered denying the total loss contentions of appellees and asserting the defense of partial loss. Trial was had before a jury and the following special issue and corresponding definition was submitted to the jury:

*"Special Issue No. 1*

"Do you find from a preponderance of the evidence that plaintiff's airplane was a total loss, as that term is defined herein, as a result of the crash, if any, occurring on May 30, 1969?

"You are instructed in connection with this issue that by the term 'total loss' means such destruction of the airplane that, after the crash, if any, there remains no substantial remnant thereof which a reasonably prudent owner, uninsured, desiring to restore the airplane to its original condition, would utilize as a basis for such restoration.

"Answer: 'It was a total loss.'

Or

'It was not a total loss.' "

No objection was made to the submission of this issue and definition by either party. The jury answered: "It was a total loss." Judgment was thereafter entered in favor of appellees awarding them $22,500.00 under the terms of the policy. Appellant perfected appeal to this court assigning no evidence and insufficient evidence points of error relating to the trial court's entry of judgment upon the jury's answer to special issue no. 1 as submitted to them.

In considering the two points of error assigned here the vital issues raised on this

appeal are centered around the concept of total loss as it relates to personal property, specifically an aircraft. Neither appellant nor appellees have cited any case that deals with this particular problem under the facts presented here. Likewise, we have been unable to find any case closely analogous to the specific problem of total loss as to an aircraft.

The special issue submitted in this case was, in almost identical form, patterned after the type of issue submitted in cases involving the total loss concept as applied to improvements on real property, i. e., buildings. It has been repeatedly held a proper issue in real property cases. Royal Insurance Co. v. McIntyre, 90 Tex. 170, 37 S.W. 1068 (1896); Fire Ass'n of Philadelphia v. Strayhorn, 211 S.W. 447 (Tex.Comm.App.—1919, opinion approved); Glens Falls Ins. Co. v. Peters, 386 S.W.2d 529 (Tex.Sup.1965).

A review of the testimony reveals the following facts, in part: Appellees purchased the aircraft in January of 1969 at a cost of $23,504.00. Witness Browning, of Browning Aerial Service, Austin, Texas, estimated the value of the aircraft immediately before the crash at $18,000.00 and after the crash at $1,800.00 or a 90% reduction in value. Witness Moore, engaged in the sale of private aircraft, estimated the value of the aircraft before the crash at $22,844.00 and the value after the crash at $2,500.00 or an 89% reduction in value. Appellee Lee Kidd testified that he would not feel safe flying the aircraft after repairs had been made in view of such extensive damage.

Various bids were submitted relating to the cost of repairs of the aircraft. The low bid was $12,443.00 and the high bid was $19,500.00. The low estimate of value after repair was $14,000.00 with the high estimate being $17,500.00. Witness Moore testified that after the crash the only parts of the aircraft that he considered of any value were the vertical fin, main gear wheels, avionics equipment and instruments, and "these are about the only parts that are not

junk." Moore also stated the only way to determine the damage, if any, to the avionics equipment was to remove them from the aircraft and test them. He also testified that the aircraft had instruments and avionics equipment of substantial value. It should also be noted that witness Horton, who submitted the low bid on costs of repairs of $12,443.00, testified that he did not know what radios or instruments the aircraft was equipped with, and did not know whether or not it had an auto pilot, this one instrument alone having a cost of approximately $1,700.00 to $1,800.00. The cost of repair estimate of $19,500.00 exceeds the highest estimate of the value of the aircraft after repair, i. e., $17,500.00, while the value of the aircraft under the low bids and estimates exceeds the cost of repairs by only $2,443.00.

An aircraft is a unique item of personal property. Its determination of value and extent of loss are subject to certain variables which are not present in other items of real or personal property. The record in this case is abundant with testimony in this regard. When damage is sustained to an aircraft certain procedures and regulations come into effect which control the repair of any damage sustained. A record is kept of the type, extent, and nature of each item damaged on the aircraft and how it was repaired. Any work on the aircraft must be done by a mechanic certified by the Federal Aviation Administration. After repairs are made the aircraft must be inspected by a licensed Federal Aviation Inspector. This entire record is made a part of the aircraft through a log book wherein records are kept on the airframe and powerplant of such aircraft. This record gives notice to anyone who may be interested in buying or flying the aircraft of any damage and ensuing repairs made on the aircraft. Further testimony reflected that an aircraft sustaining damages such as the one involved in this case would have quite an extensive record of repairs and this record would reduce the value of the aircraft. These matters were before the jury for their consideration.

Appellant contends under its no evidence point number one that there must be some legally competent evidence that there was no substantial portion of the aircraft remaining which a reasonably prudent owner uninsured would use as a basis for restoration. Appellant argues that since the aircraft could be repaired that there was a portion or remnant of the aircraft left, thus there can be no total loss. This is not, and was not, the test as agreed to by appellant. The issue submitted to the jury through its definition contained as one of its elements the test of the "reasonably prudent owner, uninsured." Further, the fact that there remains some remnant of a structure that can be repaired does not render a loss partial. Royal Insurance Co. v. McIntyre, supra; St. Paul Fire & Marine Insurance Co. v. Crutchfield, 162 Tex. 586, 350 S.W.2d 534 (1961). There is evidence of probative force that the cost of repairs of the aircraft could exceed its value after such repairs. There is evidence of the unique way in which repairs to an aircraft are recorded and the effect it has upon the value of an aircraft. The jury had evidence before it relating to the estimated values before the crash, after the crash, costs of repairs and values after the crash. Furthermore, there were some 25 photographs introduced into evidence of the aircraft in its damaged condition before the jury. "It is well established that the jury is entitled to believe all, part or none of the testimony of any witness and can draw its own conclusions therefrom." Jessie James Rogers v. J. P. Murrell, 467 S.W.2d 642 (Tex.Civ.App.—Amarillo 1971, writ dism'd w. o. j.). For example, it could believe the value of the aircraft before the crash was $22,844.00, that the cost of repairs would be $19,500.00 and that the value after the crash would be $14,000.00 or $17,500.00. There is no evidence in the record that the value of the aircraft after repairs would be as great as the value prior to the accident. Consequently, there was evidence of probative force before the jury upon which it could conclude that a reasonably prudent owner,

uninsured, would not repair the remains of the aircraft involved in the crash here. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609 (1950). Appellant argues that the "loss of confidence" factor injected through various testimony is not proper. However, no objection was made to this testimony at the trial level, and thus, no specific assignment of error is presented here. Therefore, appellant's point of error number one is overruled.

Appellant's contention in point of error number two is that there is insufficient evidence to support the jury's finding of total loss. In view of our examination and discussion of the evidence adduced at the trial and presented before us, we cannot say this finding is so against the great weight and preponderance of the evidence so as to be manifestly wrong and unjust. In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951). Accordingly, appellant's point of error number two is overruled. In view of our disposition of appellant's two points of error, the judgment of the trial court is affirmed.

We feel that, although not material to this opinion, a comparison of aircraft damages and loss recovery is more comparable to a loss involving vessels of the sea under marine insurance law than to improvements on real estate or automobiles. Vessels or ships and aircraft, both being closely controlled by the government in that both are required to maintain current logs reflecting all matters of damages and repairs, involve more risk in the use and operation thereof than improvements on real estate and automobiles. The American rule in reference to vessels of the sea is referred to as the "fifty percent rule"; that is, if a vessel is damaged and the cost of repairs exceeds by more than 50% the value of the vessel immediately prior to the damages sustained, then the insured has suffered a "constructive total loss." See Bradlie and Gibbons v. The Maryland Insurance Co., 12 Pet. (U.S.), 9 L.Ed. 1123 (1838); 6 Appleman, Insurance Law & Practice, 1942, § 3706.

Affirmed.