AETNA CASUALTY & SURETY COMPANY, Appellant,

v.

M. E. SHIFLETT et al., Appellees.

No. 8716.

Court of Civil Appeals of Texas, Texarkana.

Dec. 21, 1979.

Rehearing Denied Jan. 29, 1980.

Larry S. Gollaher, Thompson, Coe, Cousins & Irons, Dallas, for appellant.

Levert J. Able, Tom F. Coleman, Jr., Houston, David A. Gibson, Engel, Groom, Miglicco & Gibson, Houston, for appellees.

RAY, Justice.

This is a fire loss case. The appellees (plaintiffs), Billy Parker and wife, Jacqueline Parker, the named insureds and their corporation, International Wholesalers, Inc., filed suit against appellant (defendant), Aetna Casualty and Surety Company. M. E. "Panama" Shiflett, an unnamed mortgagee of Parkers', also sued Aetna. These two actions were consolidated prior to trial. The appellees sought recovery, under a homeowner's insurance policy issued by Aetna, alleging a total loss of a dwelling and its contents. The case was tried to a jury and based upon the jury's verdict, the trial court entered a judgment in favor of the insureds for the sum of $503,713.24. Out of this sum, the court awarded Shiflett a recovery of $182,638.65. Aetna has perfected its appeal and submits seven points of error for our consideration.

The judgment of the trial court will be affirmed.

In August 1975, Shiflett sold a house and some land along the San Jacinto River in Highlands, Harris County, Texas, to Billy Parker and wife, Jacqueline. The purchase price was $175,000.00, with the Parkers making a down-payment of $25,000.00 and the remainder secured by a note and vendor's lien in favor of Shiflett. Following the purchase of the property, the Parkers met William F. Robinson, Jr., an agent for the Farm Bureau Insurance Company. Robinson and Billy Parker mutually agreed that the house should be insured for $400,-000.00. Robinson testified that he never took an appraiser out to see the house; that he did not know nor did he ask how much Parker had paid for the house; that he did not ask the amount of any existing mortgage on the property; that he had personally made an inspection of the premises and its belongings, and that he concluded that $400,000.00 was a reasonable amount for which to insure the property. Robinson did not have authority to bind Farm Bureau Insurance Company for more than $100,-000.00 coverage so he secured insurance on

the property with Aetna by going through the J. H. Blades Company. The unscheduled personal property coverage was for $160,000.00, which was the standard 40% rating on a homeowner's policy. The policy did not list Shiflett as a mortgagee.

On or about the late evening of December 2, 1975, or early morning of December 3, 1975, the Parkers' house and all the contents therein were destroyed by fire. When Aetna denied coverage, the Parkers brought suit pursuant to Article 6.13 of the Texas Insurance Code Annotated seeking to recover the full amount of the policy as a liquidated demand, and for damages for loss of their personal property.

Shiflett brought suit as an unnamed mortgagee under a vendor's lien, asserting his equitable lien right. Aetna filed a general denial and asserted its affirmative defense of arson.

The Parkers testified that on the night in question they were in Mississippi where they were involved in purchasing furniture for their new furniture business in Pasadena, Texas. On the night in question, Shiflett, a diabetic, was mistakenly arrested and held in jail on charges of driving while intoxicated.

Aetna's defense was to establish arson through circumstantial evidence. Its contentions can be summarized as follows: Mr. Parker was originally from Pontotoc, Mississippi, where he was engaged in the retail and wholesale furniture business; that following a disruptive divorce, Parker came to Houston in the summer of 1975, that Parker admitted he left his business in Mississippi owing his creditors approximately $190,-175.19, including some $30,000.00 in back income taxes; that when Parker purchased the land from Shiflett he was aware that much of the property along the banks of the San Jacinto River had subsidence problems; that Parker intentionally misrepresented this fact to the insurance agent, Robinson, who secured the policy; that Fire Marshal, J. J. Pruitt, testified that in his opinion the fire was of an incendiary origin, intentionally set; that Pruitt's opinion was based upon what he believed to be two separate points of origin in the garage as evidenced by flammable liquid burn patterns; that Pruitt thought that gasoline had been poured throughout the dwelling; that a local firefighter, Darrell Davis, was of the opinion that the fire started in the garage and that its origin was incendiary; that the maid-cook said she saw the car of David Powers, an employee of Parkers', at the house on Sunday morning November 30, 1975, and early evening of Monday, December 1, 1975, before the fire.

Appellees responded by showing that no incendiary device was found; that a gas detector instrument utilized by one of the fire marshal's investigators was unable to get a reading of the presence of any gasoline; and that not a single specimen of material from the fire was scientifically tested, though such testing equipment was available.

The testimony concerning the amount and quality of the personal property in the house at the time of the fire was likewise highly disputed.

Aetna's contentions are as follows:

(1) That appellees have the burden of proof to show "total loss by fire" pursuant to Art. 6.13, Tex.Ins.Code Ann.;

(2) That Parker had the burden of requesting a special issue establishing "loss or total loss by fire";

(3) That the court erred in apportioning a total of eight peremptory challenges to the appellees (four for the Parkers and four for Shiflett) while allowing Aetna only six peremptory challenges, in violation of Art. 2151a (Supp.1978–1979), Tex.Rev.Civ.Stat.Ann.;

(4) The court erred in allowing the Parkers and Shiflett each as much time as was allotted to Aetna for final jury argument;

(5) The court erred in failing to modify standard instruction No. 2 of its charge to the jury because of the circumstantial nature of appellant's case;

(6) The jury's finding that Billy Parker did not set the fire was against the

great weight and preponderance of the evidence;

(7) That the evidence was insufficient to support the jury's finding of the amount of the personal property damages.

Article 6.13 of the Texas Insurance Code Annotated provides in part:

"A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. The provisions of this article shall not apply to personal property."

The test for "total loss by fire" was announced in the 1896 Texas Supreme Court decision of *Royal Ins. Co. v. McIntyre*, 90 Tex. 170, 37 S.W. 1068 (1896), as follows: ". . . we are of the opinion that there can be no total loss of a building so long as the remnant of the structure standing is reasonably adapted for use as a basis upon which to restore the building to the condition in which it was before the injury; that whether it is so adapted depends upon the question whether a reasonably prudent owner, uninsured, desiring such a structure as the one in question was before injury, would, in proceeding to restore the building to its original condition, utilize such remnant as such basis; . . .". 37 S.W. at 1074.

Following the *McIntyre* rule and stating the test more cogently, the Supreme Court in 1965 held:

"Whether a building is an actual total loss by fire depends upon whether a reasonably prudent owner, uninsured, desiring to rebuild, would have used the remnant for restoring the building." *Glen Falls Insurance Company v. Peters*, 386 S.W.2d 529, 531 (Tex.1965).

The initial burden of persuasion is upon the insured to establish a prima facie case of "total loss by fire." *Commerce Ins. Co. v. Sergi*, 60 S.W.2d 1046 (Tex.Civ.App. Fort Worth 1933, writ dism'd); *National Union Fire Ins. Co. v. Richards*, 290 S.W. 912 (Tex. Civ.App. Waco 1927, no writ). However, this does not necessarily mean that the in-sured had the burden of submitting a special issue on "total loss by fire." The cases of *Sullivan v. Barnett*, 471 S.W.2d 39 (Tex. 1971), and *Assurance Company v. Continental Savings & Building Association*, 8 S.W.2d 787 (Tex.Civ.App. Dallas 1928, writ ref'd), are controlling. The *Assurance* case was an action on a fire policy brought pursuant to Art. 4929, Tex.Rev.Civ.Stat. (subsequently amended to become Art. 6.13 of the Texas Insurance Code Annotated). The court initially recognized the "total loss" rule as pronounced in the *McIntyre* case. The testimony of several witnesses concerning "total loss" was to the effect that, "the building was burned to the floor, which was charred, partly destroyed, piled with rubbish, and the joists burned off; that nothing was left of the building, except the small iron steps leading into the entrance and part of the brick piers that constituted the foundation."

The defendant in *Assurance*, supra, made no attempt to prove the salvage value of the remains of the burned structure, nor did defendant develop any facts from which a conclusion could be drawn that a reasonably prudent owner, uninsured, would have used the remains of the building as a basis for a new structure. The court there held that the plaintiff had established a prima facie case that the building was a total loss within the meaning of the statute. The logical effect of this holding is that the burden of "going forward" with the evidence to rebut the existence of a total loss by fire shifted to the defendant. See 1 McCormick & Ray, Texas Evidence § 47 (2d ed. 1956). We have concluded that the Parkers established a prima facie case of "total loss by fire." The burden of going forward with the controverting evidence shifted to Aetna. It appears that Aetna did not meet its burden. We have further concluded that it is undisputed that the dwelling and its contents suffered "total loss by fire." Thus, the trial court was not required to submit a special issue related to total loss by fire since such fact was undisputed. Tex.R.Civ.P. 272; *Sullivan v. Barnett*, supra; *James v. Haupt*, 573 S.W.2d 285 (Tex. Civ.App. Tyler 1978, writ ref'd n.r.e.).

The testimony substantiating "total loss by fire" can be summarized as follows:

Billy Parker testified that "Everything we had was destroyed"; the insurance agent, William Robinson, Jr., testified that the dwelling was a total loss and had "burned to the foundation"; Mrs. Parker testified relative to the house that it was all gone, looked awful and was burned down to the ground; Shiflett stated that the house was totally destroyed; the deposition testimony of Aetna's witness, Darrel Davis, a local firefighter, was that "the extent of damage couldn't go any further than the ground," and that the house was burned totally to the ground; and, Aetna's witness, J. J. Pruitt, the fire marshal testified that the building was totally destroyed. Appellant's brief concedes that the building was a total loss by fire but states that appellees did not introduce any evidence concerning the adaptability of the foundation for restoration. If Aetna thought the foundation could be used for rebuilding the dwelling, the burden of proof was upon it to rebut appellees' prima facie case of total loss by fire. *Royal Ins. Co. v. McIntyre*, supra; *Assurance Company v. Continental Savings & Building Association*, supra; *Texas & Pacific Railway Company v. Moore*, 329 S.W.2d 293, 299 (Tex.Civ.App. El Paso 1959, writ ref'd n.r.e.)

■ Appellant contends that the trial court erred in giving each of the appellees four peremptory challenges (a total of eight) while only allowing Aetna six such challenges, and also for failing to allot equal time to argue to the jury. We have concluded that Aetna failed to timely object to the court's action and thus has waived any error of the court in allotting peremptory challenges. *Lewis v. Texas Employers' Ins. Ass'n*, 151 Tex. 95, 246 S.W.2d 599 (Tex.1952).

■ The trial court is given wide discretion in fixing the time allowed for oral argument. *Aultman v. Dallas Railway & Terminal Co.*, 152 Tex. 509, 260 S.W.2d 596 (1953). Such discretion will not be disturbed on appeal in the absence of "an affirmative showing of injury to the complaining party." *Pirrung v. T. & N. O. Railroad Co.*, 350 S.W.2d 50 (Tex.Civ.App. Houston 1961, no writ). In *Pirrung*, the trial judge allowed the plaintiff's attorney only thirty minutes for argument, while allowing each of the defendants' attorneys thirty minutes. The court there held that no abuse of discretion was shown because the complaining party failed to indicate that thirty minutes was insufficient time to properly present his case and discuss all controverted issues. The same rule applies in the instant case.

Appellant did not request additional time for argument and has not shown that such failure to grant additional time caused the rendition of an improper verdict or that he was otherwise injured by the failure of the trial court to allot Aetna's counsel additional time for oral argument.

■ Aetna contends that the evidence was insufficient to support the jury finding related to personal property damages suffered by the Parkers. The Parkers sued for $80,616.53 as the sum due for lost personalty. The jury returned a verdict for $42,500.00. As a general rule, the measure of damages to personalty is the difference in the market value immediately before and immediately after injury to such property at the place where the damages were occasioned. *Pasadena State Bank v. Isaac*, 149 Tex. 47, 228 S.W.2d 127 (1950); *Beam v. Voss*, 568 S.W.2d 413 (Tex.Civ.App. San Antonio 1978, no writ); *Jalco, Inc. v. Tool Traders, Inc.*, 535 S.W.2d 898 (Tex.Civ.App. Houston-1st Dist. 1976, no writ). However, the Texas Supreme Court has adopted a different test for lost value of household goods. In *Crisp v. Security National Insurance Company*, 369 S.W.2d 326 (Tex.1963), the court held as follows:

"It is a matter of common knowledge and of usual acceptation by the courts that used household goods, clothing and personal effects have no market value in the ordinary meaning of that term. . . . Likewise, replacement costs do not afford a fair test. . . .

"The courts have not abandoned the consideration of either market or reproduction or replacement values in arriving at actual value to the insured, but evidence of those values may be used as a guide in making that determination rather than a shackle which compels strict adherence thereto. . . ."

The court further stated,

". . . The measure of damage that should be applied in case of destruction of this kind of property is the actual worth or value of the articles to the owner for use in the condition in which they were at the time of the fire excluding any fanciful or sentimental considerations. . ."

The court also said:

"It has long been the rule generally in this state that to compensate for the loss of used household furniture and personal effects the measure of damages is the value of such goods to the owner, that is, the actual loss in money he has sustained by being deprived of articles which are especially adapted to the use of the individual and his family. . . ."

In citing these rules announced in the *Crisp* case, the court in *Wright v. Gernandt*, 559 S.W.2d 864 (Tex.Civ.App. Corpus Christi 1978, no writ), stated,

". . . It must be remembered that the owner of a chattel may testify as to its value (if he knows its value), even though he may not be qualified as an expert to testify as to the value of like property owned by others. . . ."

The Texas Supreme Court in *Allstate Insurance Company v. Chance*, 590 S.W.2d 703 (1979), reaffirmed the rule in *Crisp*, supra, and stated:

"Thus, the rule is that where household goods have no recognized market value, the trier of fact may consider, in determining the actual value to the owner at time of loss, the original cost, cost of replacement, opinions of qualified witnesses, including the owner, the use to which the property was put, as well as any other reasonably relevant facts."

We have examined the record and have concluded that the evidence supports the jury verdict.

■ Appellant contends that the trial court erred in failing to modify its standard instruction No. 2 which tells the jury that they are to consider only the evidence introduced under oath, exhibits introduced, and what they had seen and heard in the courtroom, together with the law given to them by the court, plus the instruction that they ". . . will not consider or discuss anything that is not represented by the evidence in this case." Following the printed instructions, the court had typed on the instruction sheet a detailed instruction concerning circumstantial evidence. Appellant's objection to instruction No. 2 is that the jury could have believed, by the court's not having modified such instruction, that it (the jury) could not consider inferences of fact reasonably made from the facts proven in the presence of the jury. Appellant thinks that the jury may well have thought that if no one saw Mr. Parker set the fire, then they would be compelled to answer special issue No. 4 in the negative, that is, that they did not think Billy Parker intentionally and willfully set the fire or caused the fire to be set. We think the trial court properly instructed the jury and that its instructions were not misleading. Further, appellant failed to submit a proper instruction to the court for its consideration as required by Tex.R.Civ.P. 279, and has thus waived its objection.

Appellant's points of error are overruled. The judgment of the trial court is affirmed.