**E. L. CRUTCHFIELD et al., Appellants,**

v.

**ST. PAUL FIRE & MARINE INSURANCE COMPANY, Appellee.**

No. 15849.

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 1, 1957.

Rehearing Denied Nov. 29, 1957.

J. Elwood Winters, and Ernest May, Fort Worth, for appellants.

Walker, Day & Harris, and Joe Day, Jr., Fort Worth, for appellee.

MASSEY, Chief Justice.

E. L. Crutchfield, as principal insured under a fire insurance policy covering real estate, joined with J. W. Selman, as mortgagee of the premises insured, in a suit against the St. Paul Fire & Marine Insurance Company for the full amount of insurance benefits therein provided. The theory of the suit was that of a liquidated demand on account of a total loss by fire of property insured pursuant to provisions of Article 6.13 of the Insurance Code, Vernon's Ann.Civ.St.

At the conclusion of the evidence in chief introduced in behalf of the plaintiffs, the Insurance Company filed its motion for instructed verdict. The trial court instructed the verdict requested and rendered judgment that plaintiffs take nothing by their suit and that the Insurance Company be discharged from all liability.

From such judgment the plaintiffs appealed.

Reversed and remanded.

The appeal was prosecuted upon six points of error, but the Company having conceded that the action of the court below was not supported by two of the premises upon which the verdict was instructed, we will confine our opinion to the four remaining points applicable.

■ The parties will be styled as in the trial court.

While it would appear that plaintiffs' suit should have been dismissed without prejudice in the event it was prematurely brought, and no judgment on the merits rendered, we need not dwell upon the proper form of disposition since we have arrived at the conclusion that plaintiffs' failure to file proof of loss was unnecessary under the circumstances of this case, and that though they did so fail the defendant Company could claim no benefit nor delay because thereof in this instance. It is to be remembered that the loss sued upon was necessarily alleged to be total and not partial. Plaintiffs' point of error thereupon is well taken. Solution of the question is to be found in the pleadings of the parties.

■ In the allegations of plaintiffs' petition it is asserted that the defendant denied liability. The defendant's answer embodies express denial of all the allegations in said petition. However, the defendant then proceeded to specially deny that plaintiff Crutchfield owned or had any insurable interest in the property purportedly insured as of the time of the fire, followed by various affirmative defenses, each of which the defendant asserted was operative as a separate and complete defense to plaintiffs' claim for policy benefits. It is evident that the defendant denied liability by its answer, and for the purposes of the appeal it is immaterial whether liability was denied earlier. 8 Tex. Jur., Ten Year Supp., p. 290, "Pleading", sec. 214, "Admissions in Reciting Facts—In General", and authorities annotated support our opinion that the defendant's pleadings removed any necessity on the part of plaintiffs to establish either a denial of liability for the payment of the claim or facts and circumstances excusing the failure to perform the obligations prescribed to be performed by them as prerequisite to attachment of obligations on the defendant.

■■ Since the defendant denied liability in its answer, the obligation to pay interest on the loss would be computed from the date the answer was filed, if and in the event liability should be established by the suit. Southern Underwriters v. Jones, 1929, Tex.Civ.App., Waco, 13 S.W.2d 435, error refused; followed by St. Paul Fire & Marine Ins. Co. v. Westmoreland, 1934, Tex. Civ.App., Eastland, 77 S.W.2d 265, affirmed 130 Tex. 65, 105 S.W.2d 203. If the denial of liability in the defendant's answer so operated as to any interest for which it would be liable in the event its liability on the policy should be established, it would likewise operate as a waiver of the plaintiffs' obligation to either prove compliance with conditions of the policy through the

filing of notices and proofs of loss, or to prove circumstances in explanation and excuse of the failure of compliance. Therefore, the plaintiffs' right to maintain their suit for recovery on account of total loss by fire, in view of the circumstances, would be no different from that of the plaintiff's right to maintain a like suit in the case of Security Ins. Co. v. Vines, 1932, Tex.Civ. App., Amarillo, 48 S.W.2d 1017, error refused. See also United States Fire Ins. Co. v. Adams, 1938, Tex.Civ.App., Eastland, 115 S.W.2d 788. In the cases cited, as in the instant case, suits were upon "valid claims" as liquidated demands. See Article 6.13, Insurance Code, Vernon's Ann.Civ.St.

As revealed by the points of error remaining, it is to be noticed that the action of the court below is to be sustained only in the event there was no evidence of probative force sufficient to establish as a question of fact whether plaintiffs had an insurable interest in the property allegedly destroyed,—or that the evidence indisputably established beyond question the existence of circumstances which established an affirmative defense plead by the defendant, i. e., "other effective insurance", "loss unliquidated because less than total", and/or "demand unliquidated because insurance benefits accepted under provisions of another company's policy".

■ There was a question of fact raised as to whether plaintiff Crutchfield held an insurable interest in the property since he held possession of it under a claim of right and there was evidence that he had paid an amount down on a purchase thereof and had made valuable improvements thereon under circumstances and to the extent that he derived pecuniary benefit or advantage by the preservation or continued existence of the property and would suffer pecuniary loss from its destruction. 24-B Tex.Jur., p. 200, "Insurance", sec. 75, "Property Insurance"; 44 C.J.S. Insurance § 188, p. 886, et seq., "Vendors and Purchasers"; Appleman's Insurance Law and Practice, sec. 21-23, "Insurable Interest", "What Constitutes Insurable Interest".

In the course of the introduction of the evidence, the defendant Company elicited answers to questions directed to witnesses on cross-examination which bore upon affirmative defenses it had plead and for the proof of which it carried the burden. They included the defense based upon existence of other fire insurance upon the subject property at the time its own policy was written, wherefore under provisions of defendant's policy contract it was at all times void and of no effect. They also included the defense based upon allegation that the New Zealand Insurance Company, alleged to have been the insurance company which wrote such other fire insurance, had made repairs or replacement of the subject property under the provisions of such other insurance policy, wherefore plaintiffs' recovery by their suit would be a double recovery on account of the same loss.

It is true that there was mention made (by way of hearsay testimony) of the New Zealand's policy having been in effect at time the defendant Company issued the policy sued upon. However, no policy other than that of the defendant was ever introduced in evidence, and there was no conclusive evidence which demonstrated the terms and provisions of any other policy, the property subject thereto, the extent of liability, etc. If we could say that the evidence of said policy's existence was conclusive, nevertheless other evidence (supported by plaintiffs' pleadings) raised the issue of avoidance, in that it was proved prima facie that neither of the plaintiffs had any knowledge of such policy's existence either at time the defendant's policy was secured or at the time the fire occurred.

■ There was evidence that a former owner of the property, a Mr. Bing (in whose behalf the insurance, if any, was afforded by the New Zealand Insurance Company) had agreed pursuant to his purchase of the property to secure fire insurance thereon. There was further evidence, however, that when query was made of Mr. Bing—at a subsequent time and be-

fore the defendant's policy was secured—he advised that he had not secured such insurance. At time plaintiff Crutchfield obtained insurance from the defendant, Bing held a lien on the property insured. There was further evidence to the effect that it was a Mr. Leddon who had purchased the New Zealand policy, and that he had done so without any authority from either Mr. Bing or plaintiff Crutchfield. There was no evidence establishing ratification. As applied to any transaction entailing any purchase of insurance, Mr. Leddon's connection with either of the plaintiffs, or indeed with Mr. Bing, was not clarified. Under these conditions it could not properly be said that plaintiffs were foreclosed from any recovery by their suit as a matter of law. The matter was one for the jury, whether upon the fact of other insurance, or upon the issue of "avoidance", should a finding adverse to plaintiffs be made upon such fact. Commonwealth Ins. Co. v. Evans, 1931, Tex.Civ.App., Austin, 42 S.W.2d 1088, error refused.

■ It is also true that there was mention made in the evidence that repairs had been effected to the insured premises subsequent to the occasion of the fire. The repairs were made by the son of the Mr. Leddon previously mentioned. Defendant's counsel asked the wife of plaintiff Selman on cross-examination, " * * * you are talking about repairs that the New Zealand Insurance Company made on the house?" to which the witness answered, "Yes, sir." Plaintiff Crutchfield never at any time authorized the repairs that were made,—neither did he do anything to deter the proceedings though he was apparently aware at all times that they were being performed. We do not believe that he should be held bound to have done so subject to peril of prejudice affecting his rights against the defendant. The New Zealand Insurance Company may or may not under the circumstances be disclosed to have been a mere volunteer acting to the benefit of plaintiffs. Indeed, the action taken by it may or may not have benefited plaintiffs. All this is a

matter of evidence, burden of which would properly be cast upon the defendant Company and not plaintiffs. We are obliged under the record before us to hold that the question would not be foreclosed against plaintiffs.

Furthermore, though it might develop upon another trial, during the course of which the evidence would be full and complete, that the defendant Company might be entitled to some credit by way of offset, we do not believe that the fact of such entitlement, or the granting of an offset through proper discretionary action on the part of a trial court, would be conclusively operative for that reason alone to alter plaintiffs' cause of action so that it would be other than upon a liquidated demand.

■ In the course of putting on their evidence in chief, the plaintiffs offered several expert witnesses who had inspected the insured premises after the fire occurred. These witnesses testified that the loss to the insured property was a total loss, i. e., "such destruction of a building as that, after the fire, there remains standing in place no substantial remnant thereof which a reasonably prudent owner, uninsured, desiring to restore the building to its original condition, would utilize as a basis of such restoration." Phoenix Assur. Co. of London v. Stobaugh, 1936, 127 Tex. 308, 94 S.W.2d 428, 429. Using plaintiffs' witnesses for the purpose, the defendant introduced photographs of the exterior of the building which purportedly show undamaged portions of the roof and walls. We are reminded that the plaintiffs cannot prevail under the theory under which they seek recovery if the loss was less than total.

■ We are of the opinion and so hold that the question is one of fact for the jury. The photographs amount to no more than would evidence introduced in behalf of defendant by an expert witness testifying that there did remain standing in place substantial portions of the building which

a reasonably prudent owner, uninsured, could have reasonably utilized as a basis for restoration. In a test of the propriety of an instructed verdict, we are, of course, required to view the evidence in the light most favorable to the party against whom the verdict was rendered, disregarding all evidence to the contrary.

Judgment is reversed and the cause remanded for another trial.