**C. A. BREITHAUPT et ux., Appellants,**

**v.**

**STATE of Texas, Appellee.**

**No. 3605.**

Court of Civil Appeals of Texas.

Waco.

Feb. 12, 1959.

Rehearing Denied March 12, 1959.

Mays & Jacobs, Corsicana, for appellants.

Jimmy Morris, County Attorney, Roe, Ralston & McWilliams, Corsicana, for appellee.

TIREY, Justice.

This is a condemnation case. The Court submitted three issues to the jury. Absent the burden of proof clause, and date of condemnation, they are substantially as follows:

1. What do you find was the market value of the strip of land, with all improvements thereon located, and consisting of 26.48 acres of land, condemned by the State for Highway purposes, at the time it was condemned?

to which the jury answered "$10,075.00".

2. What do you find was the market value of the defendants' tract of land, consisting of 344 acres, exclusive of the strip of 26.48 acres condemned, immediately before strip was taken for highway purposes?

to which the jury answered "39,690.00".

3. Excluding increases in value, if any, and decreases in value, if any, by reason of benefits or injuries received by the defendants in common with the community generally, and not peculiar to them, the said Breithaupts, and connected with their ownership, use and enjoyment of the particular tract of land from which the strip of land has been condemned, and taking into consideration the uses to which the strip condemned is to be subjected, what do you find was the market value of the remainder of the defendants' said tract of land immediately after the taking of the strip condemned for highway purposes?

to which the jury answered "$39,690.00".

The judgment followed the verdict and decreed that the defendants recover from the State of Texas the sum of $10,075 for the land taken, and recover nothing for damages to the remainder of the land. The judgment decreed that the state recover from condemnees the sum of $5,425, which was the difference between the sum of $15,500 deposited in the Registry of the Court and withdrawn by said condemnees, and adjudged the costs against the Breithaupts. Defendants seasonably filed their Amended Motion for New Trial, and it being overruled, perfected their appeal to this Court.

Appellants contend substantially that the Court erred (1) in permitting the State to prove that appellants purchased the improvements located on the land condemned, including the price paid and the cost of moving; (2) in permitting the State to prove that if appellants could buy the same improvements, their cost would constitute the replacement value; (3) and (4) in permitting the State's witnesses Reed and McReynolds to testify as to the market value of the land condemned and the improvements thereon because they were not qualified; and (5) because the findings of the jury that appellants' remaining land had not been damaged or depreciated in value as a result of the taking of the strip condemned is against the overwhelming weight and degree of credible testimony.

A statement is necessary. Before defendants announced ready for trial in this cause, they filed an amended motion to exclude certain evidence, and in this motion they stated in effect that the judge of the County Court had previously appointed

three commissioners to assess the value of the land to be taken and the damages sustained as a result of the condemnation, and that, thereafter, the commissioners met and proceeded to assess the value of the land taken and damages sustained by the defendants, and made their award in the sum of $15,500; that the condemnor, being dissatisfied with the award, has appealed to this Court; that therefore the condemnor deposited the full sum of $15,500 in the registry of the court and took possession of the properties for the purpose of highway construction; the motion further set out that on the land condemned were valuable improvements—houses, barns, garages, lakes, etc., and that the condemnor took actual possession of the houses, barns and garages and disposed of these fixtures at a price fixed or accepted by the condemnor; they asserted that the evidence of the sale of the improvements by the condemnor was not a free and voluntary sale made by a willing seller to a willing buyer, but was in fact a forced sale made by plaintiff under necessity of immediately vacating the premises. The defendants moved the Court to instruct the condemnor and its attorneys not to refer to, nor in any way introduce evidence upon the question of the sale of the improvements located upon the acreage condemned, to whom the same was sold and the amount of money that the improvements brought, individually or collectively, or the disposition of said improvements, because such evidence or statements would be immaterial and highly prejudicial, and would not be proper evidence of the true, reasonable fair market value of such improvements. The Court, after hearing testimony on the motion, overruled it. The record shows that prior to this condemnation appellants' land consisted of 344 acres; that Highway 75 ran north and south through this land, leaving 13 acres on the west and the balance on the east; that the two tracts were connected by a cattle underpass running under Highway 75, and the appellants could drive across the highway in going from one part to the other. The tract condemned consisted

of a long, narrow strip 26.44 acres, and came off of the east part, so that after the condemnation, appellants retained 317 acres, of which 13 acres remained on the west side of the new highway and 304 acres on the east side, to be divided permanently by controlled access highway.

After the award of the commissioners, the State deposited $15,500 in the registry of the court and took possession of the land and the improvements thereon; the improvements were advertised for sale upon sealed bids, upon condition that they be removed as quickly as possible. Such improvements were sold and thereafter purchased by appellants and actually removed by appellants from the condemned land. Thereafter, the State, in the presence of the jury, was permitted, over appellants' objection, to show that the respective improvements located upon the land were sold to the appellants and the prices paid therefor. In appellants' Bill of Exception No. 1, approved by the trial court, we find substantially the following: the County Judge of Navarro County was called to the witness stand and, out of the presence of the jury, testified to the effect that at the time the strip of land in question was condemned there was located upon such strip barns and other improvements; that after the award of the board, the plaintiff took physical possession of these improvements, including the residence thereon; that the residence was sold after advertising it for sale in the paper; that upon sale the improvements; including the residence, had to be moved off of the land; that the County had an understanding with the purchaser that the improvements were to be removed from the premises as quickly as they could; that the residence was moved to a point about one-half of a mile away; that the County received three bids for the residence; that the County sold a large corral and barn located on the land; that when the County condemned the tract it knew it would have to sell and make some disposition of the barn, or move it off of the premises; that the barn was sold by bid

at the same time the County sold the house; that more than two bids were received for the barn, and that it was sold upon condition of removal.

That while the cause was on trial in the presence of the jury, and while defendants' witness, Bonner, was on the stand, plaintiff's attorney asked the witness:

"Q. Did you bid on the house? A. Yes, sir, I did.

"Q. Did you buy the house? A. Yes, sir.

"Q. Will you state whether or not you sold the house subsequent to that —did you sell the house after you bought it? A. Later on, yes sir, I sold it.

"Q. Mr. Bonner, to whom did you sell the house in question? A. Mr. Allen Breithaupt.

"Q. Will you tell us what he paid you for that house? A. One thousand twenty-six dollars."

Defendants timely objected to the questions and answers because the purchase of said improvements which had been located upon the condemned tract was not a voluntary purchase by a man who desired to buy, or a man willing to sell, but was a purchase at forced sale and under the conditions of immediate removal from the premises, and could not be a fair test of the market value of the property. Appellants further objected to the testimony on the ground that it could not form a correct basis for arriving at a reasonable fair market value of the improvements, and that said testimony was highly incompetent and highly prejudicial, and was calculated to mislead the jury as to what constitutes a reasonable fair market value. The Court overruled each of the objections and permitted the testimony to go to the jury. The bill of exception further shows that while defendants' witness, Banks, was testifying, the condemnor's attorney elicited the following testimony from such witness:

"Q. Mr. Banks, assuming that Mr. Breithaupt could buy a secondhand house, of the identical same age, exactly the same dimensions and in exactly the same condition as this house, and could replace it with one exactly like it, would not you say that that would be the reasonable replacement value of that property? A. Well, just on the face of it, it looks like it would be all right.

"Q. Let's go one step further, Mr. Banks, and assume that he could buy the same house, in the same condition, the very identical same house, at a certain figure; would not you say that that would be the reasonable replacement part of it? A. Well, if you move a house, I don't think you can move a house as good as you can when it is first built."

Defendants objected to the foregoing questions and answers on the ground that they did not constitute a true test of the market value of said improvements when considered as part of the land condemned, and the cost of these items did not include elements which go into and are a test of defendants' damage in this instance, and because the answers of the jury were speculative, prejudicial, and involve substantially what a residence or house of similar, or of same kind, might be bought for under forced sale with the necessity of immediate removal. The Court overruled these objections and permitted the testimony to go to the jury. To which ruling the defendants excepted. The bill further shows that while the defendant, Allen Breithaupt, was on the witness stand, the court permitted condemnor's attorney to prove by him that the residence located on the land condemned was repurchased by him for the sum of $1,026; that each of appellants' objections to this testimony was overruled, to which they excepted.

The Court likewise permitted condemnor's attorney to prove by Breithaupt that he purchased the barn located on the land

and moved it upon other land owned by him; that he purchased the cow shed and moved it off of the condemned property to his property, as well as the tool shed; that the bill shows that all of this testimony was timely objected to for reasons mentioned, and was by the Court overruled.

■ Going back to Point 1, did the trial court err in permitting the State to prove that appellants purchased improvements located on the land condemned after condemnation, the price paid and the cost of moving such property? We think it did. As we understand our decisions, we think our courts have uniformly held that prices paid for property by condemning authority are not admissible to establish market price of the property being condemned, because such sales are not free and voluntary under the rule as to what constitutes a willing seller and a willing buyer. This Court followed the foregoing rule in Menchaca v. San Antonio Independent School District, Tex.Civ.App., 297 S.W.2d 363 (writ dis.). See cases there cited. See also Too Fan v. City of El Paso, Tex.Civ.App., 214 S.W.2d 158.

In State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194 (Com.Apps. op. adopted) we find this statement:

"* * * 'market value' is the price which the property would bring when it is offered for sale by one who desires, but is not obliged to sell, and is bought by one who is under no necessity of buying it." Pt. 89 S.W.2d at page 202.

Our Supreme Court again gave approval to this definition in the case of City of Austin v. Cannizo, 153 Tex. 324, 267 S.W.2d 808, at page 812, pt. 1. It is our view that the testimony heretofore set out was prejudicial to the defendants on the question of market value, and that such error will require that this cause be reversed and remanded. But appellee contends that such testimony tendered as to the sale of improvements after the property was condemned does not violate the foregoing rule

because the only condition attached to the sale of personal property located on real estate condemned was that the appellee reserved the right to reject any and all bids, but it was understood that the property had to be moved off; that there was no length of time stated as to when said improvements should be moved off; that none of the personal property purchased by the Breithaupts was purchased by them from the condemning agency, but all of the personal property purchased by them was purchased from third parties after said third parties had purchased said property from the appellee. Appellee further says that the State proved the cost of moving the improvements to other land owned by the appellant Breithaupt, as well as the appellee's witness, Joe Barham. The record shows these costs were as follows: for moving the barn, $300; residence, $200; tool house, $150; and a small building, $50, making the total cost of removal $700. In appellee's brief we find this statement:

"It is conceded that the *ultimate* issue before the jury was the 'market value' of the land taken, considered as severed land, with all improvements located thereon, and this issue was so submitted to the jury. *But* where the Appellants fall into error is in not distinguishing between the *ultimate* issue to be determined by the jury and *evidentiary* matters which may be considered in helping the jury to arrive at the ultimate issue. Appellee does not contend that the sale price of the improvements is necessarily the 'market value' of the improvements, considered as a part of the realty, but only that such sales price is a proper element to be considered by the jury in estimating the damages, or the market value of the land taken. Appellee feels that the crux of this matter revolves around the distinction between the ultimate issue and the evidentiary facts or issues which are admissible in assisting the jury to reach the ultimate issue, namely, market value.

"The Courts have long recognized there are many different elements, or evidentiary facts which may be considered by the jury in determining the value of real property and/or improvements thereon in condemnation cases, including the evidence of expert witnesses as to their opinion of the market value; evidence of similar sales in such locality; replacement values of personal property attached to such realty; and other elements.

"This third method mentioned, namely, replacement values is the basis of the proper admissibility of the evidence complained of in Appellants' Points One and Two, because replacement values are an element which may be considered in determining the market value of the property in question."

It is our view that appellee's contentions are in direct conflict with the rules of law applicable to the peculiar factual situation here before us. For example: the sale of the improvements by the State to Bonner was without a doubt a forced sale, and we think also highly prejudicial to appellants. Likewise, the testimony elicited from Mr. Breithaupt as to what he paid for this property was in effect a forced sale, because the property had to be removed immediately from the condemned land on to his remaining land. Appellants were still under compulsion to remove the improvements immediately, which alone reduced the value of the severed improvements. So we think under the undisputed evidence we still have no voluntary sale and purchase of the improvements after they were severed. Moreover, the State's sale was by sealed bids, and upon condition of immediate removal, which fixed to some extent the trading value of the improvements as chattels separate and apart from the land, and under the onerous condition of immediate removal, and these facts of necessity we think would reduce materially the market value of the improvements under their fair market value as a part of the realty condemned. So we think that the testimony complained of was no evidence of the improvements' fair market value as a part of the condemned land.

The appellee contends that under the decision of our Supreme Court in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 979, 980, that the testimony of Bonner and Breithaupt was not erroneous and prejudicial because the Supreme Court said:

"It is a general rule that improvements situated upon the portion of land taken are to be considered as a part of the realty. They ordinarily have no market value separate from the land. Therefore, when such improvements are taken or destroyed their value can be reflected in the finding as to the value of the land taken, and evidence of their value is admissible for that purpose. As an alternative, however, if the improvements which are situated upon the portion of the land taken are essential to the use and enjoyment of the remainder of the land, or if their replacement, by removal or reconstruction, is necessary in order to obviate depreciation in the value of the residue, the cost of removal, and/or reconstruction and/or replacement may be a proper inquiry in connection with the issue of diminished market value of the remainder."

Appellee, in discussing the foregoing rule, says:

" * * * Clearly, this language by our Supreme Court, speaking through the adoption of the Commission of Appeals opinion, leaves no doubt that the use of the same improvements can be 'replacement value', and certainly if it would be admissible in connection with the issue of diminished market value of the remainder, it would be admissible in connection with market value of the land taken."

We think appellee's application of this rule to the testimony of Bonner and Breithaupt is not sound because it overlooks the

fact that their testimony with reference to values and removal was on a forced sale. We think it is obvious under the foregoing rule that the sale of the improvements on the strip taken could be proven by qualified witnesses as to the value of the improvements as they stood on the land at the time it was condemned, but the value of the improvements as determined at a forced sale, as well as their removal under forced sale, is certainly erroneous and prejudicial under the rule as we understand it. That leads us to say that we think our views just expressed are not in conflict with the statements relied on by appellee in State v. Doom, Tex.Civ.App., 278 S.W. 255 (N.W. H.), and Housing Authority of City of Galveston v. Henderson, Tex.Civ.App., 267 S.W.2d 843 (N.W.H.).

This Court, following the Supreme Court in the Carpenter case in State v. Miller, Tex.Civ.App., 92 S.W.2d 1073, 1074 (N.W. H.), opinion by the late Justice Alexander, made this statement of the rule:

"The remedy of eminent domain * * * is a harsh one and must be exercised in accord with the strict principles appertaining thereto. * * * Such proceeding is in the nature of an enforced sale in which the agency so appropriating the land stands in the position of a buyer. Consequently it must either take the land with the permanent improvements thereon as it stands and pay for it accordingly, or reject it in toto. It cannot strip the improvements therefrom and compel the owner to provide other land to receive the salvage, and then rightfully insist that the owner is fully compensated by the payment of the value of the naked land so appropriated."

This record shows that appellants deemed the evidence here complained of to be erroneous and highly prejudicial before announcing ready for trial, and took every precaution to prevent it from being admitted.

Appellants' Points 3 and 4 complain of the admission of certain testimony by the witnesses Reed and McReynolds, appellants contending in effect that the witnesses' testimony showed that they were not qualified to testify as to the market value of the land condemned and the improvements located thereon. We have reviewed their testimony very carefully and the objections and arguments of appellants concerning the same, and we do not believe that the admission of their testimony presents reversible error. Similar questions have been before our courts in many cases, and it is well settled in Texas that it is largely discretionary with the trial judge as to whether a witness is qualified to testify as to market value, and that an appellate court should not disturb the action of the trial court in admitting such testimony, in the absence of a clear abuse of discretion. Such was our holding in City of Teague v. Stiles, Tex.Civ.App., 263 S.W.2d 623 (N.R.E.) and State v. Griffis, Tex.Civ.App., 300 S.W.2d 220. See also opinion of this Court in City of Waco v. Roberts, Tex.Civ.App., 12 S.W.2d 263, pt. 4. Opinion affirmed in 121 Tex. 217, 48 S.W.2d 577. See also 16a Tex.Dig.Evidence, ▮▮▮▮ That leads us to say that it is our view that the objections of appellants to the testimony of each of these witnesses went to the weight of their testimony, and that the trial court did not err in overruling the objections. We are of the further view that a detailed discussion of their testimony, and the objections made, would be of no precedential value.

Appellants' 5th Point is to the effect that this cause should be reversed because of the findings of the jury that appellants' remaining land had not been damaged or depreciated in value as a result of the taking of the strip condemned, because such verdict is against the overwhelming weight and degree of credible testimony.

We have reviewed, very carefully, the testimony relating to this point. The record shows that prior to this present con-

demnation proceeding, appellants' land was divided by Highway 75, leaving approximately 13 acres to the west and the remainder to the east; that when this condemnation proceeding was had, the additional acreage was taken off of the east part of the tract, leaving approximately the same 13 acres on the west side, and a remainder of 304 acres on the east side. The witnesses for appellants fixed the damages to the remainder of appellants' land as follows: Bonner, $20 per acre; Banks, $10 per acre; McManus, $15 per acre; Gordon, $35 per acre; Allen, $20 per acre; and Breithaupt, $15 per acre.

The State's witnesses testified to the effect that the remaining land would not be depreciated or it would be actually enhanced in value. The witness, Marshall, said: "If it was mine, I would think it was enhanced by the highway." The witnesses, Dreeven and Harwell, testified to the effect that the remaining land was not depreciated in value. The witness, Reynolds, testified to the effect that it was increased in value. The witness, Griffin, stated: "No more and no less. If anything, it would be more. They'd have a better road there, but I just left it the same."

Appellants, in their brief, say:

" * * * the State offered witnesses who gave their opinion that no damage to the remainder resulted—despite the fact that the record affirmatively shows material damage to appellants' remaining land. The three experienced men chosen by the District Judge to act as Commissioners in Condemnation, after a contested hearing, fixed this damage at $7550.00, and yet the jury found no damage."

▇▇▇ This cause was fully developed, and each witness tendered was subjected to a most rigid cross examination, testing his views as to values as well as all matters about which he had testified. The jury had the opportunity to see and hear each wit-ness and to make an appraisal of the credibility of each witness and the weight to be given to such witness' testimony. Under this record as a whole, and under the doctrine announced in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 and Tudor v. Tudor, Tex., 314 S.W.2d 793, we cannot say as a matter of law that the answer of the jury to the effect that appellants' remaining land had not been damaged or depreciated in value as a result of the taking of the strip condemned is against the overwhelming weight and degree of credible testimony. The jury had the right to believe the State's witness in this behalf. See Couch v. Gulf, C. & S. F. Ry. Co., Tex. Civ.App., 292 S.W.2d 901 (N.R.E.).

Since we are of the view that this cause will have to be reversed and remanded for reasons heretofore stated, further comment on the matter just discussed will be omitted. Reversed and remanded.