### The AETNA CASUALTY AND SURETY COMPANY, Appellant,

### v.

### Helen Christie CLARK, joined pro forma by her husband, J. W. Clark, Appellees.

### No. 17087.

Court of Civil Appeals of Texas.

Dallas.

April 19, 1968.

Lawrence R. Maxwell, Jr., of Bailey, Williams, Weber & Allums, Dallas, for appellant.

Alvin Boyd, Dallas, for appellees.

CLAUDE WILLIAMS, Justice.

Action on insurance contract. On October 16, 1963 the Aetna Casualty & Surety Company (hereinafter called Aetna) issued its policy of insurance commonly referred to as Texas Standard Farm and Ranch Owners Policy naming Mrs. Helen Christie as insured. The policy extended insurance coverage against all risk of physical loss (except scheduled exclusions) and covered Mrs. Christie's dwelling located four and one-half miles southeast of Prosper in Collin County, Texas. The policy also extended coverage to household goods and personal effects located in the dwelling. The limits of liability on the policy were $8,500 for the dwelling and $5,000 for the household goods and personal effects. While the policy was in full force and effect on November 20, 1965 a fire occurred in the house and damage to the structure and personal contents resulted. Mrs. Christie asserted her claim for the fire damage to the house and contents and when same

was not paid she brought action in the district court, joined pro forma by her present husband, J. W. Clark, seeking recovery of money due her under said contract of insurance. Aetna answered alleging, *inter alia,* that Mrs. Clark had intentionally burned or caused the intentional burning of the dwelling covered by the policy; that Mrs. Clark had failed to render a sworn proof of loss within 91 days after the fire; and that she had rendered the policy ineffective by removing her residence and ceasing to occupy the dwelling covered by the policy.

The case proceeded to trial before the court and a jury and in answer to special issues submitted the jury found: (1) that the actual value to Mrs. Clark of the furniture, furnishings and personal belongings lost in the fire was $4,500; (2) that the reasonable market value of the house immediately prior to the fire was $9,000; (3) that the reasonable market value of the house immediately after the fire was "None"; (4) that the building in question was a total loss; (5) that the reasonable cost of replacement of the house in question, within a reasonable time after the fire, was $8,500; (6) that Mrs. Clark did not intentionally burn the house in question; (7) that Mrs. Clark did not cause the intentional burning of the house; (8) that Mrs. Clark and her husband were maintaining their residence in Dallas, Texas on the date of the fire; (9) that Mrs. Clark did not fail to notify the insurance company, or its agent, that she was maintaining her residence in Dallas, Texas prior to the fire; (10) that Mrs. Clark had not ceased to occupy the farm house for more than 60 days prior to the date of the fire; (11) that Mrs. Clark did not remove a substantial portion of her household goods and personal effects from the farm house in question more than 60 days prior to the fire; (12) that the insurance company, through its agents, within 91 days after the date of the fire denied liability on said claim to Mrs. Clark; (13) that the insurance company received oral notice of the alleged loss sustained by Mrs. Clark within 91 days after the fire; (14) that the insurance company, through its agent, requested Mrs. Clark to submit a list of the contents of the house in question within 91 days after the date of the fire; (15) that Mrs. Clark orally gave the insurance company agent a list of the contents of the house in question within 91 days after the date of the fire; (16) that the insurance company, by its conduct inquired about in Special Issues 13, 14 and 15, waived the filing of a sworn proof of loss within 91 days after the fire; (17–20) that certain acts on the part of the insurance company and its agents, in requesting a list of the contents of the building subsequent to the fire, constituted a waiver of the filing of written sworn proof of loss within 91 days after the fire. The insurance company filed its motions to disregard certain answers of the jury and also the motion for new trial, all of said motions being overruled. Based upon the verdict of the jury the trial court rendered judgment against Aetna and in favor of Mrs. Clark for the sum of $13,859.73, which represented $8,500 value of the house set by the terms of the policy, plus $4,500, being the value of the contents, plus 6 per cent interest on the $8,500 from the date of the loss. From this judgment the insurance company appeals.

In a barrage of points, 33 in number, appellant mounts an attack upon the trial court's judgment. In 17 of its points appellant presents the question of "no evidence" or "insufficient evidence" concerning the answers of the jury to various special issues. In our consideration of the points so presented we have adhered to the rule announced by our Supreme Court in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

By its first and second points of error appellant contends that the answers of the jury to Special Issues Nos. 6 and 7, wherein it was found that Mrs. Clark

did not intentionally burn the house, nor cause the same to be burned, are contrary to the overwhelming weight and preponderance of the credible evidence. Appellant correctly states the law to be that public policy will not permit a recovery by an insured who knowingly burns, or causes to be burned, insured property in order to collect the insurance thereon. Ritter v. Mutual Life Ins. Co., 169 U.S. 139, 18 S.Ct. 300, 42 L.Ed. 693 (1898); Jones v. Fidelity & Guaranty Ins. Corp., 250 S.W.2d 281 (Tex.Civ.App., Waco 1952, writ ref'd). It is also the law that the burden of proof was upon appellant to secure a favorable finding on the defensive issues pleaded. Payne v. Hartford Fire Ins. Co., 409 S.W.2d 591 (Tex.Civ.App., Beaumont 1966, writ ref'd n. r. e.). Appellant offered no direct evidence to the effect that Mrs. Clark actually ignited the fire in question or caused the same to be done. Appellant relies upon circumstances and inferences drawn from the testimony. The court properly defined circumstantial evidence.

■ The statement of facts produced before us in this case contains 722 pages and a substantial portion thereof is devoted to efforts on the part of appellant to prove by inferences and circumstances that Mrs. Clark, or someone under her direction, actually burned the house. To summarize this mass of testimony would unduly lengthen this opinion and serve no useful purpose. We have carefully read and considered all of the evidence tendered and have reached the conclusion that the answers of the jury to the special issues submitted on these questions are not contrary to the great weight and preponderance of the evidence. The court and jury trying this case saw and observed the various witnesses who testified and were in a far better position to evaluate such testimony than this court. Based upon our review of the record in accordance with the applicable rules we are of the opinion, and so hold, that appellant failed to sustain its burden of proof of establishing its affirmative defenses of arson. Appellant's Points 1 and 2 are overruled.

By its third and fourth points of error appellant assails the jury's answer to Special Issue No. 4, concerning total loss, because there is either no evidence to support such jury's answer or that same was contrary to the great weight and preponderance of the evidence. The court defined "total loss" as follows:

"By 'total loss' is meant such destruction of a building as that, after the fire, there remains standing in place no substantial remnant thereof which a reasonably prudent owner, uninsured, desiring to restore the building to its original condition, would utilize as a basis of such restoration."

This definition was carefully evolved and enunciated by our Supreme Court in the early case of Royal Ins. Co. v. McIntyre, 90 Tex. 170, 37 S.W. 1068, 35 L.R.A. 672 (1896). Appellant made no objection to either the submission of the issue nor of the definition given in connection therewith.

The answer of the jury to Special Issue No. 4 to the effect that the building in question was a total loss, within the court's definition, finds support in evidence of probative force. Both parties introduced considerable testimony, both from witnesses and in the form of photographs, in an effort to demonstrate the extent of damage done by the fire. Mrs. Clark testified that when she visited the house on Sunday morning immediately after the fire she found what she described as a "melted house"; that the interior of the house was smoked and ruined as well as scorched from the fire; that her clothing and personal effects were ruined to such an extent that she was only able to salvage one item, a small Bible. It was shown that the personal belongings of both Mrs. Clark and her sons, who lived in the house, had remained untouched from the time of the fire to the time of the trial for the reason that the house and its contents were con-

sidered to be ruined and of no value. No effort had been made to protect the shell of the building. Photographs were introduced by appellee, as well as by appellant, demonstrating conclusively that the rooms had sustained damage from the flames in varying degrees throughout the house. Photographs introduced by appellant revealed little, if any, damage caused by the fire to the exterior of the house. Apparently the principal damage was confined to the interior of the structure.

Mr. James Harris, a general contractor, who was shown to be familiar with the house in question testified that prior to the fire the property was worth $11,000; that he had carefully examined the house following the fire and that in his opinion it was then only worth $250. He also testified that the replacement cost of the house immediately after the fire would be $8,784.

Mr. Price Stark, a realtor, who was shown to have had experience in real estate activities in the neighborhood in question, testified that he appraised the house at between $9,500 and $10,000 prior to the fire. As to the value of the house after the fire he testified:

"Q It's your testimony that this house that you observed in March of 1966 depicted here—does that picture depict the house?

"A Yes, sir.

"Q That that house has no value, is that your testimony?

"A Yes, sir.

"Q No value.

"A Scrap.

"Q It is your testimony that if Mrs. Clark owned that house and she were a willing seller and she went out and found a willing buyer, taking that state of facts, that a buyer would give you absolutely zero for that house?

"A I believe she would have to pay to get it off."

Appellant tendered testimony to the effect that the house was not a total loss and could be utilized in rebuilding. Thus there is no doubt but that the evidence was conflicting but the jury resolved such conflict by finding that the loss was total, as defined by the court.

Appellant takes the position that, as a matter of law, the loss was not total, relying almost entirely upon the opinion of the Commission of Appeals in 1930 in American Central Ins. Co. v. Terry, 26 S.W.2d 162. In that case the Commission of Appeals held that the photographs introduced in evidence, as well as the testimony of witnesses, permitted but one reasonable conclusion and that was that the house was not a total loss. However, the Supreme Court of Texas in St. Paul Fire & Marine Ins. Co. v. Crutchfield, 162 Tex. 586, 350 S.W.2d 534 (1961) considered a similar situation and reviewed a record containing conflicting evidence relating to total loss. Associate Justice Hamilton, speaking for the Supreme Court, said:

"St. Paul contends there is no evidence to support the jury verdict that the loss was total. The statement of facts contains several pages of testimony devoted to this subject. While the evidence may be conflicting, there was direct testimony by one or more witnesses who viewed the structure after the fire and who testified to the effect that the loss was total. The mere fact that some of the charred structure might have been used in new construction does not make the loss partial. Royal Insurance Company v. McIntyre, 90 Tex. 170, 37 S.W. 1068, 35 L.R.A. 672. We believe a jury issue on the question of total loss was properly raised, and, having been resolved against the petitioner, we find no reason to

disturb the finding of the jury to that effect." *

█ Based upon our study of the record in this case we find evidence of probative force to support the submission of and the answer of the jury to Special Issue No. 4 to the effect that the loss was total. We cannot agree with appellant that the evidence is so contrary to the great weight and preponderance of the evidence as to be manifestly wrong or unjust. Appellant's third and fourth points are overruled.

Assuming, without conceding, that we are wrong in overruling appellant's points concerning total loss, yet the judgment of the court is sustained in law by the jury's findings concerning partial loss. The trial court made no recitation or finding in the judgment rendered which would indicate that such decree is based upon the jury's answer to the issues relating to total loss or to partial loss. The amount of the judgment rendered is within the limits of the policy under either theory of recovery. Under the circumstances here presented the judgment should be upheld if it can be done upon any theory of law and supported by the record.

█ The measure of damages under an insurance contract insuring a dwelling, when the loss is not total, is the difference between the value of the property immediately before and immediately after the loss and damage, but within the amount of the policy. Lerman v. Implement Dealers Mutual Ins. Co., 382 S.W.2d 285 (Tex. Civ.App., Houston 1964); 32 Tex.Jur.2d, § 402, p. 617, and cases therein cited.

The jury, in answer to Special Issues 2 and 3, found that the reasonable market value of the house immediately prior to the fire was $9,000 and immediately afterwards "None". The judgment, as relates to the house, was for $8,500, the limits of liability

under the insurance contract. A review of the record reveals competent evidence of probative force to support the jury's answers to Special Issues 2 and 3. Appellant's Points 11, 12, 13 and 14 are overruled.

█ By its fifth and sixth points of error appellant complains of the action of the trial court in permitting the witnesses Glenn Holloway and Price Stark to testify over objection of appellant as to their opinion concerning whether or not a reasonably prudent owner, uninsured, desiring to restore the house in question would use the remnants left standing as the basis for such restoration, the grounds of such objection being that the evidence invades the province of the jury and is not a proper subject for expert testimony. Appellant refers us to statement of facts, pages 244 and 408, but a careful examination of these pages of the record fails to reveal any reference to the matters complained of in these points. An examination of all of the testimony of these two witnesses fails to reveal that either was asked the question complained about. Both testified concerning their qualifications to render an opinion on values and both did submit estimates of values. Points 5 and 6 are overruled.

By its seventh, eighth, ninth and tenth points of error appellant complains that there were no proper pleadings to support the submission to the jury of Special Issues 2, 3 and 5 dealing with the question of values on both the theory of total and partial loss. Appellant also complains of the trial court admitting any evidence concerning reasonable market value of the house prior to and after the fire because of lack of proper pleadings to support such testimony.

█ An examination of the record reveals that appellant did not level any exceptions or objections to any of the

---

* For other cases discussing the question of proof in cases of total loss, where parts of the structure remain, see Republic Ins. Co. v. Hale, 69 S.W.2d 482 (Tex. Civ.App., Texarkana 1934); United States Fire Ins. Co. v. Boswell, 82 S.W. 2d 176 (Tex.Civ.App., Fort Worth 1935) and Lincoln County Mutual Fire Ins. Co. v. Smith, 232 S.W.2d 637 (Tex.Civ. App., Fort Worth 1950).

special issues submitted by the trial court. In fact, there are no objections or exceptions to the charge as submitted. We therefore think that any objection to the issues based upon lack of pleadings is waived. Rules 272 and 274, Vernon's Texas Rules of Civil Procedure. Even so, an examination of the pleadings of appellee convinces us that same are sufficient to support the submission of the issues complained about and also the offer of testimony concerning values. Appellee went to trial upon her third amended original petition in which she alleged that she was the owner of the house and contents insured under a policy of insurance issued by appellant, such policy being referred to and incorporated in appellee's petition as well as a copy being attached. Appellee alleged that she sustained loss on account of the fire and that such loss was covered by the terms of the policy and that she was entitled to recover from the appellant all damages sustained by her. She alleged the total loss, described the building destroyed, and itemized the contents for which she made claim. The petition, in the alternative, asked for replacement cost of the dwelling as provided under the terms of the policy, and in the alternative thereto that appellee "seeks recovery of the amount of the loss sustained by her." Appellant leveled no exceptions to appellee's pleading and it is well established that under certain conditions the pleadings will be liberally construed in favor of the pleader and to support the judgment. Scott v. Gardner, 137 Tex. 628, 156 S.W.2d 513, 141 A.L.R. 50 (Tex.Comm.App. 1941); Labay v. Amicable Life Ins. Co., 261 S.W.2d 476 (Tex.Civ.App., Waco 1953). It is not essential to the recovery of damages that the measure of damages be alleged in the petition. All that is necessary is that the petition sufficiently allege facts establishing a cause of action from which the court can ascertain the proper measure of damages. The measure of damages is a matter of law for the court. 17 Tex.Jur.2d, § 197, p. 263, and cases therein cited.

By its 15th and 16th points of error appellant assails the answer of the jury to Special Issue No. 5 concerning replacement value of the house because the jury's answer was not supported by any evidence or because the finding is contrary to the great weight and preponderance of the evidence. These points are without merit and are overruled. We find sufficient evidence to support the jury's answer to such issue. Moreover, as demonstrated by our discussion in connection with previous issues the judgment of the court may be sustained under other theories than that encompassed by the finding of the jury complained about.

In its Points 17 and 18 appellant complains concerning the testimony offered by witnesses Glenn Holloway and Price Stark concerning the value of the house because, appellant contends, no proper predicate was laid qualifying the witnesses to express an expert opinion on the subject. We overrule these points. Both witnesses testified concerning prior experience in constructing and selling homes in the community where the house was located. The trial court is vested with wide discretion in permitting expert testimony under such circumstances. Standard Motor Co. v. Blood, 380 S.W.2d 651 (Tex.Civ.App., Houston 1964); Breithaupt v. State, 321 S.W.2d 361 (Tex.Civ.App., Waco 1959); Webb v. Mitchell, 371 S.W.2d 754 (Tex. Civ.App., Houston 1963). We observe no abuse of discretion demonstrated by this record.

By its next group of points, 19 to 22 inclusive, appellant attacks the jury finding concerning value of the personal property involved. Appellant first says that there were no proper pleadings to support the submission of Special Issue No. 1 inquiring concerning the actual value to appellee at the time and place of the fire of the furniture, furnishings and personal belongings owned by her. As stated above, appellant did not object to the submission of this issue, or any other issue, and there-

fore such complaint is waived. However, as previously discussed in connection with other points, we think the pleadings are sufficiently broad to justify the submission of such issue. Next, appellant says that the answer of the jury to Special Issue No. 1 is against the overwhelming weight and preponderance of all the evidence. We cannot agree. Appellee attached to her petition an extensive itemized list of her furniture and belongings lost in the fire. She testified to the cost of most of the items and their actual value at the time of the fire. The total cost and value which appellee testified about were far in excess of the sum of $4,500 found by the jury. Appellant did not attempt to offer value testimony disputing these figures. The jury was the judge of the credibility of the witnesses and the weight to be given their testimony. We find no basis to disturb the finding.

█ Appellant complains of the admission of Mrs. Clark's testimony concerning the value of the various items of personal property because she was not properly qualified to express such opinion. Our Supreme Court, in Crisp v. Security Nat. Ins. Co., 369 S.W.2d 326 (1963), considered a similar objection, and in disposing of it said:

"It is a matter of common knowledge and of usual acceptation by the courts that used household goods, clothing and personal effects have no market value in the ordinary meaning of that term. They may be sold but only at considerable sacrifice which by no means represents the value of the articles to the owner. We find no recognized authority which would hold the insured to a recovery based solely on the proceeds obtainable on a secondhand market. Likewise, the replacement costs do not afford a fair test."

█ A witness need not be an expert in any technical sense in order for his opinion to be received. It is sufficient if he has a knowledge of the general value-standard of things in that particular class. Texas Law of Evidence, McCormick & Ray, § 1422, p. 257. See also International-Great Northern R. Co. v. Casey, 46 S.W.2d 669 (Tex.Comm.App.1932). We find no reversible error reflected in Points 19 through 22 inclusive, and overrule same.

Appellant utilizes its Points 23 to 30 inclusive to attack the judgment based upon jury findings concerning waiver of the policy provision relating to proof of loss being filed within 91 days after the date of the fire. Appellant contends in these points that the record demonstrates as a matter of law that appellee did not comply with the policy provisions and file a verified proof of loss within 91 days after the date of the fire and that the answers of the jury to Special Issues Nos. 12, 16 and 20, all relating to waiver, are not supported by any evidence or are contrary to the overwhelming weight and preponderance of the evidence.

█ In answer to Special Issue No. 12 the jury found that appellant, through its agents, servants and employees, within 91 days after the fire, denied liability to appellee or her attorney. In answer to Special Issues 15 and 20 the jury found that the conduct on the part of appellant company, as revealed by other jury findings, amounted to a waiver on the part of the company of the provision relating to proof of loss. Mrs. Clark testified unequivocally that within the 91-day period Mr. Hubert C. Bowlden, the duly authorized agent and representative of Aetna, advised her that the company had denied liability for the loss. Mr. Bowlden denied this conversation. The jury saw and observed the witnesses and resolved the issue against appellant. We find ample evidence to support the jury's answer to Special Issue No. 12. We find sufficient evidence to support the jury's answers to the issues relating to waiver and therefore overrule appellant's complaint thereto.

■ There is no question but that provisions or conditions contained in a policy of insurance designed for the benefit or protection of the insurer may be waived by the company or its authorized agents. 32 Tex.Jur.2d, Insurance, § 381, p. 589. The jury found, based on sufficient testimony, that appellant denied liability to Mrs. Clark within the 91-day period. By denying liability before the expiration of said period appellant waived the filing of the proof of claim. Austin Building Co. v. National Union Fire Ins. Co., 403 S.W.2d 499 (Tex.Civ.App., Dallas 1966).

■ Moreover, Art. 6.13, Insurance Code, Vernon's Ann.Civ.St., provides that a fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. The provisions of this article do not apply to personal property. It has long been the law in Texas that when the loss is total, and therefore a liquidated demand is proper, notice or proof of loss is not necessary. Queen Ins. Co. v. Jefferson Ice Co., 64 Tex. 578 (1885); American Central Ins. Co. v. Terry, 26 S.W.2d 162 (Tex.Comm.App. 1930); Crutchfield v. St. Paul Fire & Marine Ins. Co., 306 S.W.2d 948 (Tex.Civ. App., Fort Worth 1957); State & County Mutual Fire Ins. Co. v. Kinner, 314 S.W.2d 871 (Tex.Civ.App,. Waco 1958, affirmed Supreme Court, 159 Tex. 290, 319 S.W.2d 297). Appellant's Points 23 through 30 inclusive are overruled.

■ By its 31st and 32nd points of error appellant contends that the trial court should have granted its motion for judgment notwithstanding the verdict because, as a matter of law, the house described in the policy of insurance was not occupied by the named insured on the date of the fire and that the policy provision with reference to occupancy had been violated to such an extent as to void the coverage. We cannot agree with appellant and overrule these points.

The jury found that Mrs. Clark and her husband were maintaining, as their residence, the property at 3402 Seevers Street in Dallas, Texas, and that she had notified the insurance company of this fact. It also found that Mrs. Clark had not ceased to occupy the farm house in question for more than 60 days prior to the date of the fire nor had she removed a substantial portion of her household goods and effects from the farm house more than 60 days prior to the fire. There is adequate evidence to support these findings.

The policy in question contains a provision relating to "vacancy" wherein it is provided that if the owner-occupant of an insured dwelling ceases to occupy said dwelling and the unscheduled household goods and personal effects, or a substantial portion thereof, are removed therefrom the dwelling shall be deemed vacant and the coverage shall be suspended effective 60 days after date of removal of such unscheduled household goods and personal effects and remain suspended during such vacancy. It is undisputed in this record that Mrs. Clark left a considerable amount of furniture and other personal effects in the house; that she visited the house frequently during the week and on most weekends; that her two sons lived in the house and commuted to school. The answers of the jury, supported by the evidence, clearly removes the case from the application of the provisions of the policy relating to suspension of coverage.

■ By its 33rd and last point of error, appellant contends that the trial court erred in rendering judgment with interest prior to the date of the judgment because interest is not recoverable prior to judgment unless the date on which a sum certain should be paid is reasonably ascertainable from the evidence. The judgment provides that appellee recover interest on the $8,500 house loss at the rate of 6 per

cent from November 20, 1965, the date of the fire. We believe that interest on the loss to the house should probably begin on the date of the denial of liability on the part of appellant, which is shown to have been on or about January 25, 1966. In Standard Nat. Ins. Co. v. Bayless, 338 S.W.2d 313 (Tex.Civ.App., Beaumont 1960), the court considered the identical contention and held that interest begins from date of denial of liability. Accordingly, we modify the court's judgment by providing that the $8,500 portion of the award bear interest at the rate of 6 per cent per annum from January 25, 1966. Accordingly, the total amount of the judgment would be $13,755.77 and this amount will bear interest at the rate of 6 per cent per annum from date of judgment.

Having carefully examined this entire record and failing to find reversible error reflected therein, we modify the trial court's judgment and, as modified, affirm the same.

Modified and, as modified, affirmed.